## WUTZKE v. COUNTY FIRE INSURANCE CO. OF PHILADELPHIA.

1. EVIDENCE—INSURANCE—CERTIFICATE OF INSURANCE HELD BY MORT-GAGORS—NOTICE.

In action of assumpsit on fire insurance policy, illiterate insured mortgagors *held*, chargeable with knowledge of contents of certificate of insurance but not with notice of different provisions of policy held by mortgagee of which the certificate purported to be a true copy.

2. INSURANCE—PROOFS OF LOSS—WAIVER—MORTGAGES.

Insurer waived proofs of loss due to fire, where certificate given to illiterate mortgagors, which purported to be a true copy of policy running to and held by mortgagee, contained no reference to proofs of loss and both insurer's agent and its adjuster affirmatively induced mortgagors merely to list lost articles and wait.

3. SAME—CONSTRUCTION OF POLICY—SUBSEQUENT CONDUCT—PRACTICAL CONSTRUCTION—WAIVER—ESTOPPEL.

Rule that policy of insurance covering a building and personal property therein is indivisible arises from construction of contract and is, therefore, subject to modification by subsequent conduct operating as a practical construction or by way of waiver or estoppel.

4. SAME—ACCEPTANCE OF PREMIUM FOR ADDITIONAL COVERAGE—FORE-CLOSURE OF MORTGAGE—WAIVER OF EFFECT.

Acceptance of premium for additional coverage by insurance agent who had authority to issue policies and accept premiums and who knew that mortgage was being foreclosed but who did not inform illiterate mortgagors of effect of foreclosure under policy held by mortgagee, amounted to consent to continuance of policy, for which they paid premium, as to any property in which mortgagors should have insurable interest after period of redemption had expired.

Appeal from Berrien; White (Charles E.), J. Submitted January 17, 1934. (Docket No. 135, Calendar No. 37,625.) Decided April 3, 1934.

Assumpsit by Henry Wutzke and wife against County Fire Insurance Company of Philadelphia on a fire insurance policy. Judgment for defendant. Plaintiffs appeal. Reversed, and judgment ordered entered for plaintiffs.

*Clarence E. Butler,* for plaintiffs.

*Stuart B. White,* for defendant.

FEAD, J.   February 11, 1930, defendant issued a three-year fire insurance policy to plaintiffs, covering $1,200 on farm dwelling house, $500 on household and personal effects therein, nothing on barn, $350 on horses and cows, and $300 on vehicles. The real estate was mortgaged to Charles Molter and the loss, if any, was made payable to him.

The mortgage was foreclosed by sale March 15, 1931. The period of redemption was one year. Plaintiffs did not redeem. But they continued to occupy the house as their dwelling as tenants of Molter. The household effects were destroyed by fire November 23, 1932, after the period of redemption had expired. This action is on the policy. Defendant had judgment, in trial before the court on agreed statement of facts, on the ground that, (1) plaintiffs had failed to make proofs of loss, and (2) the policy was indivisible and, the insurance on the building having terminated by change of title, the insurance on the personalty lapsed with it.

The original policy was delivered to Molter. Ferd Streich, the agent who solicited and wrote the policy, gave plaintiffs a certificate of insurance. No question is raised as to the agency or authority of Streich to bind the company. The certificate occupies nearly nine pages of the printed record. It states that it "does insure" plaintiffs against

loss and damage by fire, describes the risk in detail and in form as in a policy, contains clauses covering alterations and repairs, explosions, other insurance, prorating of loss, lightning, electrical apparatus, guest property, awnings, vacancy and loss of rents or rental value. It uses the terms "this policy" and "insured hereunder" over 20 times. Except for the final clause, one not entirely familiar with insurance policies and standard statutory forms would think the certificate was the policy. The final clause reads:

"This certificate is issued with the understanding that it is only a copy of the policy named herein, and is subject to all clauses, riders, amendments, indorsements and assignments that may be made on said policy, and in case of cancellation of policy, this certificate will immediately become null and void."

Obviously the clause warns the assured that the certificate is not the policy, but it assures him that it is a true copy of the policy, subject to such additions, other than the body of the policy, as should be made thereon.

In October, 1931, Streich wrote $700 on the barn, by means of an indorsement rider, "to be attached to policy," which he annexed to the certificate. Mr. Wutzke cannot read or write English. His wife can read a little but she did not read the certificate nor did they have it read to them. Apparently they merely took and kept the paper given them by the agent and assumed it was correct, as most of us would have done. They can hardly be blamed for thinking the certificate contained the whole of the contract. It did not contain the clauses voiding the policy for change of title and providing

for proofs of loss which were in the body of the policy when issued.

When Mr. Streich wrote the barn insurance he was told by plaintiffs that the mortgage had been foreclosed and the period of redemption would expire in March. Plaintiffs did not pay the premium for the barn insurance until the next July and September, after the period of redemption had expired. When paying premium in July they told Streich that they had lost the farm by foreclosure and were renting from Molter. Streich had paid the company the premium the preceding January but plaintiffs had no knowledge of it.

The next day after the fire plaintiffs notified Streich, who told them that he would notify the company, and he did at once, and that plaintiffs were to make out a detailed list of their loss and give it to the adjuster, who would appear in a few days. Several times within 60 days they called on Streich for adjustment and he assured them the adjuster would come. The adjuster appeared about 60 days after the fire. Mrs. Wutzke, offered him a list of the property burned, the adjuster told her to keep it and he would be back in about a week. He did not return. At no time within 60 days did the company deny liability nor were plaintiffs informed it was necessary to file sworn proofs of loss. The record does not show when, if at all, the company denied liability before suit.

The certificate of insurance introduces an unusual element into the case. Plaintiffs contend it is the whole contract. Perhaps, under the circumstances, the contention is not far amiss so far as practical results are concerned. The case is also complicated by the fact that plaintiffs did not read the certificate.

And there was no showing that they knew a policy had been delivered to the mortgagee. The case must be considered, therefore, upon the basis that plaintiffs knew what they were required to know.

Of course, plaintiffs were charged with knowledge of the contents of the certificate itself. But, because of the representation of the certificate that it is a copy of the policy, they were not charged with notice of other provisions in the body of the policy. Defendant can hardly insist that plaintiffs were chargeable with knowledge of the insurance law and the standard form of policy when it issued to them a misleading instrument, calculated to throw them off guard.

The certificate contained no reference to proofs of loss. The assurance thereby given that proofs were not necessary was confirmed by defendant's agent and its adjuster, who not only failed to inform plaintiffs of the requirements of the policy not found in the certificate but affirmatively induced them to believe that all they had to do was to make a list of the lost articles, keep it and wait. Defendant thereby waived proofs of loss. *Security Ins. Co.* v. *Fay,* 22 Mich. 467 (7 Am. Rep. 670).

The courts are about equally divided upon the point, 47 A. L. R. 650, 53 A. L. R. 1123, notes, but it is the rule in this State that a policy of insurance covering a building and personal property to be contained therein is indivisible; so that the voiding of the risk on the building voids the insurance on the personal property. *Benham* v. *Farmers' Mutual Fire Ins. Co.,* 165 Mich. 406 (L. R. A. 1915 D, 736, Ann. Cas. 1912 C, 983); *Ætna Ins. Co.* v. *Resh,* 44 Mich. 55 (38 Am. Rep. 228). The rule arises out of a construction of the contract and is founded

upon the proposition that the risk on one item affects the risk on the other. Therefore, the rule is subject to modification by subsequent conduct of the parties operating as a practical construction of the policy or by way of waiver or estoppel.

Both when he wrote the barn insurance for the unexpired term of the policy and when he accepted the premium, defendant's agent knew the state of the title. His knowledge was imputed to the company (*Schaefer* v. *East & West Ins. Co.*, 260 Mich. 220), and his acts were the company's acts because he had authority to issue policies and receive premiums. He could have written a policy for the household furniture alone. By accepting the premiums he waived the forfeiture. *Beebe* v. *Michigan Bankers & Merchants Fire Ins. Co.*, 263 Mich. 151. His acts, done without notice to plaintiffs of the effect of the foreclosure upon the personal property insurance, amounted to a consent to the continuance of the policy as to any property in which plaintiffs should have an insurable interest at the time of loss. The result is the same whether it be called a practical construction of the policy or a waiver of forfeiture or indivisibility.

Judgment reversed and cause remanded for entry of judgment for plaintiffs, with costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.