MUNDHENK *v.* LIVERPOOL & LONDON & GLOBE
INSURANCE .CO., LTD.

1. INSURANCE—LICENSE FOR AGENT—RIGHTS OF POLICYHOLDER.
   The fact that person who issued fire insurance policy for de-
   fendant insurer and collected premium thereon was not li-
   censed by the State to do so does not defeat the rights of
   policyholder.

2. SAME—IRREGULARITIES OF AGENT—ESTOPPEL.
   After loss sustained by fire of property covered by policy which
   had been issued by defendant insurer through its agent who
   had been provided with signed blank policies, defendant which
   had accepted premium from its agent would be estopped from
   disclaiming liability because of irregularities of its own agent
   for whose actions insured were in no way to blame.

3. SAME—MAKING OF CONTRACT—DELIVERY.
   In action by insured under fire insurance policy to recover for
   loss sustained, evidence *held,* sufficient to show that contract
   of insurance was entered into between plaintiff and defendant
   where it shows plaintiff ordered insurance coverage from de-
   fendant's agent, the agent who also wrote insurance for other
   companies assured plaintiff that a policy had been written,
   and plaintiff was handed a policy in defendant company al-
   though the previously-prepared policy was not delivered until
   the day after the loss, sustained 12 days after plaintiff ordered
   the insurance, had occurred.

4. PAYMENT—ACCEPTANCE OF NOTE.
   The giving of a promissory note is not the payment of an in-
   debtedness unless it is agreed that it is so accepted and the
   evidence to establish payment must be positive and satis-
   factory.

5. ACCORD AND SATISFACTION—PERFORMANCE.
   An accord cannot be made a successful defense unless fully per-
   formed.

6. INSURANCE—PAYMENT OF LOSS BY AGENT'S NOTE—RELEASE BY VENDOR UNDER TITLE-RETAINING CONTRACT.

Insurer was not released from liability under policy for loss by fire by fact that its agent gave insured who had recently purchased property covered under a title-retaining contract a promissory note for amount of loss at meeting of insured, the agent, the deputy insurance commissioner, insurer's representatives and another party but at which the vendors had not been represented, since insured could not give a release for his vendors, where note was never paid.

7. SAME—TITLE-RETAINING CONTRACT—DESCRIPTION IN POLICY—ESTOPPEL.

While a chattel mortgage and a title-retaining contract are not identical, the liens are apt to be considered identical by laymen, hence where the risk under a fire insurance policy was not increased by the fact that the vendors under title-retention contract were described as mortgagees in the policy and the agent who issued the policy knew of their interest, both its nature and amount, the insurer would be estopped to deny liability on that account, if a mistake was made.

8. SAME—BREACH OF CONDITION—DESCRIPTION OF RELATION OF PARTIES INTERESTED IN PROPERTY COVERED.

An insurance policy is not void for the breach of a condition as to description of relation of parties in interest which breach did not contribute to the loss or damage or to the amount thereof (3 Comp. Laws 1929, § 12572).

Appeal from Washtenaw; Sample (George W.), J. Submitted April 4, 1945. (Docket No. 27, Calendar No. 42,932.) Decided June 4, 1945.

Assumpsit by Charles R. Mundhenk and Charles Mayhew and wife against Liverpool & London & Globe Insurance Company, Ltd., on fire insurance policy for loss by fire. Judgment for plaintiffs. Defendant appeals. Affirmed.

*John P. Keusch* (*Ralph C. Keyes,* of counsel), for plaintiffs.

*Mellott & Kelly,* for defendant.

Butzel, J.  On June 9, 1942, Charles R. Mundhenk, plaintiff, purchased on a title-retention contract from Charles Mayhew and wife, coplaintiffs, a restaurant with equipment and fixtures in Chelsea, Michigan.  The contract was duly filed June 15, 1942.  It showed an unpaid balance of $1,700.

Paul F. Niehaus, in addition to working for a bank at Chelsea, Michigan, wrote fire insurance for the Liverpool & London & Globe Insurance Company, Ltd., the defendant, and also for two other companies.  Defendant furnished Niehaus with a bronze sign, which he placed in the window of the space occupied by him at the bank, and with letterheads and envelopes bearing its name.  It also gave him blank insurance policies, numbered and signed by it, and gave him authority to insert the names and descriptions and amounts to purchasers of insurance.  It was Niehaus' duty to report the issuance of such policies to defendant and to remit the amount of the premiums less his commissions.  Defendant had never questioned but, on the contrary, recognized and approved of the policies issued by Niehaus.  It distinctly clothed him with authority to issue such policies signed by it in advance.  Niehaus never was licensed by the State of Michigan to write this insurance for defendant but this does not defeat the rights of policyholders.  *Coverdill* v. *Northern Insurance Co.*, 243 Mich. 395.

After banking hours on June 10, 1942, the day after Mundhenk purchased the restaurant, while Niehaus was in the restaurant, Mundhenk asked him to return in the evening as he wished to purchase insurance.  That evening Mundhenk told him that he wanted a coverage of $2,500 on the fixtures, et cetera, and $500 on the stock.  Niehaus accepted the order and assured Mundhenk that the restaurant and stock were covered.  No written binder was is-

sued nor did the parties consider it necessary. Mundhenk had every reason to believe that he had proper insurance coverage. Two waitresses testified on behalf of plaintiffs that they overheard part of the conversation in regard to insurance. The title-retention contract provided that Mundhenk was obligated to take out insurance so as to protect the vendors. Two or three days later, in response to an inquiry, Niehaus informed the attorney for the vendors that Mundhenk had taken out the insurance.

On June 22, 1942, the equipment, fixtures and stock of the restaurant were partially destroyed by fire. The following morning Mundhenk went to the bank and Niehaus handed him the policy in defendant's company which had been previously filled in. It bore the date of June 10, 1942, the day on which it had been ordered. Mundhenk testified that Niehaus took the policy from the safe. Niehaus testified he made out the policy the same evening that he received the order for the insurance and placed it in a compartment in his drawer. When Mundhenk received the policy, he paid the premium of $35.10 and Niehaus gave him a receipt which he dated June 10, 1942. Niehaus immediately notified defendant's Detroit office, and also the company which did the adjusting for defendant. An adjuster made the investigation shortly thereafter and adjusted the loss at $2,750.30. In the proof of loss signed by Mundhenk, it was stated in heavy print that the blank furnished by the representative of defendant and the preparation of the proofs of loss were not to be considered a waiver of any of defendant's rights.

Niehaus did not report the issuance of the policy to defendant until two days after the fire. Over a month later the company billed Niehaus for the

premium and also for one due on another policy issued to a different party. Defendant received and cashed the check Niehaus sent in payment of these two premiums. Defendant stated that at the time it received the premium it did not have any knowledge of the conditions under which the policy had been written. The following month, defendant's State agent took possession of the remaining policies signed in blank and the other supplies which defendant had furnished Niehaus. The agency thus was terminated. Niehaus admitted the looseness or irregularity with which he had conducted his insurance business. Defendant is estopped from disclaiming liability because of the irregularities of its own agent for whose actions plaintiffs were in no way to blame. In *Angell* v. *Hartford Fire Insurance Co.*, 59 N. Y. 171 (17 Am. Rep. 322), policies signed in blank were given to an agent. He disobeyed instructions in issuing them. The company was held liable. To like effect see *King* v. *Phoenix Insurance Co.*, 195 Mo. 290 (92 S. W. 892, 113 Am. St. Rep. 678, 6 Ann. Cas. 618).

After Mundhenk had waited a long time for payment of the loss, he wrote the insurance commissioner. A meeting called at the latter's office in Lansing was attended by Mundhenk, Niehaus, the president of the bank that employed Niehaus, and representatives of defendant. After a general conference held by the parties in the hall without Mundhenk, Niehaus stated that inasmuch as the insurance company would not pay the loss and that he was guilty of a mistake in not sending in the report on time, he was giving Mundhenk a 60-day note for the loss. Mundhenk stated that he was satisfied with this arrangement and would accept it. The deputy insurance commissioner stated he would keep the policy in his office until the note became

due and asked Mundhenk to advise him the moment it was paid so that the file might be closed. He asked defendant's agent whether such arrangement would be satisfactory and he assented. The policy was turned over to the deputy insurance commissioner. The premium was shortly thereafter tendered back to Mundhenk, but his attorney refused to accept it. The note was not paid and the instant suit was brought. The judge tried the case without a jury and entered judgment against defendant for the full amount of the claim.

Defendant on appeal claims that in view of the circumstances hereinbefore stated, no contract of insurance was ever entered into. The testimony shows the contrary. The judge saw the witnesses, judged their credibility, and his findings are supported by the testimony. Appellant, however, claims that inasmuch as there were three insurance companies whom Niehaus was representing, Mundhenk did not know with whom he was doing business until after the fire. He did know that he ordered the insurance from the agent empowered to write insurance for defendant, that he was assured the policy had been issued and was handed the policy in defendant company. Both Mundhenk and Niehaus testified that the insurance was ordered the evening of June 10, 1942. Niehaus testified that he wrote the policy the same evening in defendant company and thus the defendant became liable. The testimony shows that after the fire occurred, the policy previously prepared and signed was delivered to Niehaus. Defendant contends that the testimony shows there was a conspiracy between Niehaus and Mundhenk to antedate the policy because of Niehaus' carelessness. The testimony does not bear out this claim.

Appellant further claims that the giving of the note by Niehaus constituted a discharge of defendant company's liability. In *Stadler* v. *Ciprian,* 265 Mich. 252, numerous authorities are cited to the effect that the giving of a promissory note is not the payment of an indebtedness unless it is agreed that it is so accepted and the evidence to establish payment must be positive and satisfactory; that it is a general and well-settled rule that an accord cannot be made a successful defense unless fully performed. The controlling fact in the instant case is that defendant was not to be released until the note was paid. Mundhenk was not represented by counsel and, while there is testimony to the effect that he took the note and delivered the policy to Niehaus, who turned it over to the deputy insurance commissioner, Mundhenk testified that his intention ''in taking the note was to give them more time to get the money together to pay. It seemed like there was something wrong. I didn't know what it was.'' The policy was held by the deputy insurance commissioner who was also properly looking after the interest of the insured. Defendant's agent specifically acquiesced in this arrangement and made no demand for surrender of the policy. Defendant knew, or should have known, that it was not released from its liability under the policy inasmuch as the Mayhews, coplaintiffs, were interested parties to a larger extent than Mundhenk, and the latter could not act for them and give a release. Defendant was not released.

It is further claimed that Mundhenk did not reveal to Niehaus his true title and interest as required under the policy, and, therefore, the policy was void. The policy contained a standard mortgage clause making the loss payable to Charles and

Dorothy Mayhew as their interest might appear. Appellant contends that as the Mayhews were not mortgagees but vendors under the title-retention contract, neither the true title of Mundhenk or the Mayhews was disclosed.

Mundhenk testified as follows:

"I told Mr. Niehaus I wanted to take a policy out to cover the place there and to cover this here contract, that I was requested to do it by the lawyer and Mr. Mayhew, and he filled out the papers there with $2,500 on the fixtures and made the papers out for it, the order for it, and $500 on the stock. He talked insurance and made a note of it. That's all that was said. I talked with Mr. Niehaus in the evening. It was not very late. It was after banking hours. Mr. Niehaus made out a slip for the interest what Mayhews had. I told him that they had so much equity in the place and he would have to attach a mortgage clause on the insurance for the equity. I gave him the names of Dorothy and Charles Mayhew and my own name. I told him I wanted my equity insured and theirs also. I didn't tell him that I owned the property."

A layman is apt to consider the liens of a title-retention contract and a mortgage as identical. The difference between them is fully set forth in *Burroughs Adding Machine Co.* v. *Wieselberg,* 230 Mich. 15. They are not identical. *In re Petition for Dissolution of Parkstone Apartment Company,* 243 Mich. 401. However, the risk in the instant case was not increased at all because Mayhews were described as mortgagees instead of vendors under the title-retention contract. Niehaus' attention had been called to the existence of such contract. If a mistake was made, defendant is estopped from denying liability on that account. Under the facts in this case, we hold that the policy was not void for

the breach of the condition inasmuch as such breach did not contribute to the loss or damage or to the amount thereof. 3 Comp. Laws 1929, § 12572 (Stat. Ann. § 24.422).

We have attempted to call attention to what we believe are the important facts in the case. A more detailed statement would not alter our conclusion that the trial judge was correct in his findings.

Judgment affirmed, with costs to plaintiff.

STARR, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.