HASTINGS MUTUAL INSURANCE COMPANY v HARTFORD
ACCIDENT & INDEMNITY COMPANY

Docket No. 69106. Submitted November 8, 1983, at Grand Rapids.—
Decided May 15, 1984. Leave to appeal applied for.

A house, an outbuilding, and personal property owned by James
and Susan Reed were destroyed by fire. The property was
insured at the time of the fire by Hastings Mutual Insurance
Company but, because Hastings had notified the Reeds of its
intention to cancel the policy, the Reeds had attempted to
obtain insurance from Hartford Accident & Indemnity Com-
pany. Oliver Scott, an independent insurance agent, allegedly
told the Reeds that he would "put a 30-day binder" on the
Hartford policy, effective July 1, 1979. No written binder was
ever issued and on July 26, Scott was notified by Hartford that
it did not wish to insure the Reeds. The fire occurred on July
30, 1979. Hastings paid the Reeds for the loss then brought an
action against Hartford for contribution. The Cass Circuit
Court, Michael E. Dodge, J., held that the statutory five-day
limit for oral binders was a cancellation clause subject to an
exception which allows "the cancellation clause of such Michi-
gan standard policy" to be superseded by the terms of a
contract of temporary insurance. The court held, therefore,
that Hartford insured the loss, as well as Hastings, and
awarded Hastings a judgment against Hartford for 50% of the
amount paid to the Reeds. Hartford appealed. *Held:*

1. The exception relied on by the trial court refers only to the
statutory cancellation clause contained in the Michigan stan-
dard fire insurance policy, MCL 500.2832. The provision which
limits an oral binder to five days is not a cancellation term but,
rather, provides for the expiration of such a binder by opera-
tion of law.

2. The reliance of Hastings and the trial court on appellate
decisions which hold that an insurer is bound by the actions of
an agent to the extent that the agent had the apparent author-
ity to act as he did is misplaced. Those decisions are based upon

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 196, 250.
[2] 28 Am Jur 2d, Estoppel and Waiver §§ 35, 61.

the doctrine of equitable estoppel. Because Hastings did not rely to its detriment upon anything done by Hartford, no estoppel arose in this case.

Reversed.

1. STATUTES — JUDICIAL CONSTRUCTION.

The courts, in construing a statute, must discover and effectuate the intent of the Legislature; in doing so, the statute must be construed, if possible, so as to give effect to every word used therein.

2. ESTOPPEL — ELEMENTS OF ESTOPPEL.

Estoppel arises where one by his acts, representations, or silence when he ought to speak, intentionally or through culpable negligence induces another to believe in the existence of certain facts and that person justifiably relies on the existence of those facts to his detriment.

*Hatch & Smith* (by *James W. Smith*), for plaintiff.

*Rhoades, McKee & Boer* (by *Michael W. Betz*), for defendant.

Before: ALLEN, P.J., and R. M. MAHER and R. H. BELL,* JJ.

PER CURIAM. Defendant Hartford Accident & Indemnity Company brings this appeal as of right from an order entered in the Cass County Circuit Court requiring contribution of 50% of a claim paid by plaintiff Hastings Mutual Insurance Company to James and Susan Reed.

The litigation below concerned a claim resulting from a fire which destroyed a house, an outbuilding, and personal property belonging to the Reeds. It is undisputed that the property was insured at the time of the fire by Hastings. The issue is whether Hartford was also on risk.

The Reeds dealt with Oliver Scott, an indepen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dent insurance agent. Scott was an agent for both Hastings and Hartford. The Reeds obtained farm owners' insurance through Scott from Hastings on January 7, 1976. From May of 1976 to May of 1979 the Reeds made eight claims on the policy. In June of 1979, Scott received a letter from Hastings stating the company's intention to cancel the Reeds' policy. Scott informed the Reeds of the situation and, on June 29, 1979, sent an application on their behalf for farm owners' insurance to Hartford, requesting an effective date of July 1, 1979. Mr. Reed testified that Scott stated he was going to "put a 30-day binder on". Scott could not recall exactly what he had told the Reeds about the binder, but his understanding was that the application to Hartford created a valid contract of insurance until such time as it was rejected by the company. No written binder for a 30-day period was ever executed.

On July 6, 1979, the Reeds received a formal notice of cancellation from Hastings, effective August 7, 1979. On July 26, Scott received a phone call from John Heyboer of Hartford, stating that his company did not wish to insure the Reeds' property. Heyboer asked Scott if the Reeds were still covered by Hastings. When told that they were, he stated that he would not bill the agency for the binder, and that he considered that there had been no insurance in effect. When asked on cross- examination why he had inquired about the Hastings coverage, Heyboer stated that if the Reeds had not been covered, his company would have assumed the risk for a few days as a courtesy to Scott. This was Hartford's custom in dealing with its agents. Scott did not inform the Reeds of Hartford's rejection.

The fire occurred on July 30, 1979. Hastings paid the Reeds $47,046 and brought this action for

contribution against Hartford, resulting in a judgment for $23,523, or 50% of the claim.

The first question which we must address is whether Scott's statement to Reed that he would "put a 30-day binder on" effectively bound Hartford by contract for a period of 30 days from July 1, 1979. The Insurance Code of 1956 provides in § 2816, MCL 500.2816; MSA 24.12816, as follows:

"Binders or other contracts for temporary insurance may be made orally for 5 days or in writing for any further reasonable period, and shall be deemed to include all the terms of the Michigan standard policy and all such applicable endorsements, approved by the commissioner, as may be designated in such contract of temporary insurance; except that the cancellation clause of such Michigan standard policy, and the clause thereof specifying the hours of the day at which the insurance shall commence, may be superseded by the express terms of such contract of temporary insurance."

It is undisputed that there was no written binder of insurance issued by Scott on behalf of Hartford. The trial court, however, quoting a portion of the exception to this provision, specifically that language stating: "except that the cancellation clause * * * may be superseded by the express terms of such contract of temporary insurance", held that the five-day limitation for oral binders was a cancellation clause which had been superseded by the agreement between the Reeds and Scott.

In construing a statute, it is the obligation of the courts to discover and effectuate the intent of the Legislature. *E.g., Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956); *Avon Twp v State Boundary Comm,* 96 Mich App 736, 743; 293 NW2d 691 (1980). If possible, a

statutory provision must be construed to give effect to every word used therein. *Melia, supra; Deshler v Grigg,* 90 Mich App 49, 53-54; 282 NW2d 237 (1979), *lv den* 407 Mich 875 (1979).

In our opinion, the trial court's construction of the language which it relied upon is erroneous. Considered in full, it is clear that the provision in dispute merely allows the statutory term governing the cancellation of a Michigan standard policy of fire insurance to be varied by the express terms of the contract of temporary insurance.

Section 2832 of the Insurance Code of 1956, MCL 500.2832; MSA 24.12832, mandates the specific form of the standard fire policy to be used in Michigan. The cancellation clause to be included in a standard fire policy is contained in lines 56 through 67 of MCL 500.2832; MSA 24.12832.[1] The trial court erred in failing to distinguish between the cancellation of an existing policy of insurance and the expiration of insurance by its own terms or by operation of law. See and compare, *Wynn v Farmers Ins Group,* 98 Mich App 93, 96-97; 296 NW2d 197 (1980), and cases cited therein.

Were we to accept the trial court's construction of the exception to MCL 500.2816; MSA 24.12816, we would render that portion of the provision making oral binders for temporary insurance effective for only five days totally without force since every oral agreement to extend temporary cover-

---

[1] The statutorily mandated cancellation clause provides:

"This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

age for more than five days would fall within the exception to the provision.

Hastings and the trial court also rely on a series of appellate decisions which hold that an insurance company will be bound by the actions of an agent to the extent that the agent had the apparent authority to act as he did or which note that the purpose of the Insurance Code is to protect policyholders or both. See, *inter alia, Mundhenk v Liverpool & London & Globe Ins Co, Ltd,* 311 Mich 571, 575; 19 NW2d 103 (1945); *Wutzke v County Fire Ins Co of Philadelphia,* 266 Mich 556, 561; 254 NW 203 (1934); *Coverdill v Northern Ins Co of New York,* 243 Mich 395, 397-398; 220 NW 758 (1928); *Armstrong v Western Manufacturers' Mutual Ins Co,* 95 Mich 137, 139; 54 NW 637 (1893).

Although not always so expressed in these decisions, it is clear that each has its underpinning in the doctrine of equitable estoppel.[2] When the elements necessary to establish estoppel are scrutinized, it is evident that Hastings is not entitled to the judgment rendered in its favor.

Estoppel arises where one by his acts, representations, or silence when he ought to speak, intentionally or through culpable negligence induces another to believe in the existence of certain facts and that person justifiably relies on the existence of the assumed facts to his detriment. See, *e.g., Holt v Stofflet,* 338 Mich 115, 119; 61 NW2d 28 (1953); *Johnson v Harper-Grace Hospital,* 92 Mich App 202, 205; 284 NW2d 520 (1979). In this case, Hartford did nothing to induce any belief on the

---

[2] In fact, estoppel is explicitly said to be the basis of the decisions in *Mundhenk, supra,* and *Coverdill, supra.* Cf., *Industro Motive Corp v Morris Agency, Inc,* 76 Mich App 390; 256 NW2d 607 (1977) (Insurer and agent held to be estopped to deny that policy protected the insured to the extent of the coverage which had been requested by the insured.).

part of Hastings, and Hastings did not detrimentally rely on the existence of certain facts as a consequence of Hartford's representations, actions, or silence. Hastings's policy was issued years before Hartford ever became involved with the Reeds, and the record is devoid of any evidence of contacts between Hastings and Hartford in respect to the Reeds before the fire. Hastings was, by its admission, on risk for the incident which resulted in extensive fire damage to the Reeds' property. This was the result of Hastings's decision to issue the Reeds a fire insurance policy in January, 1976. Hartford did not induce Hastings to issue the policy nor to continue coverage by representing that it, too, had issued a policy to the Reeds. Since there was no detrimental reliance by Hastings, estoppel did not arise. See *Larson v Van Horn,* 110 Mich App 369, 380; 313 NW2d 288 (1981).

Because the fire occurred when there was not an effective contract of insurance issued by Hartford which protected the Reeds, and because Hastings was not induced by, nor had it relied upon, the actions of Hartford in issuing or continuing its effective policy of insurance covering the Reeds, the trial court's decision must be reversed and judgment entered for Hartford. It is so ordered.

Reversed. No costs, a public question of first impression.