## TOMLIN v DEPARTMENT OF SOCIAL SERVICES

Docket No. 86690. Submitted June 12, 1986, at Lansing. Decided September 15, 1986.

Petitioner, Raiford Tomlin, D.O., was ordered by respondent, Department of Social Services, to reimburse the DSS in the amount of $57,844.51 for medicaid overpayments made to petitioner for unnecessary treatment petitioner had provided to his patients during 1978, pursuant to a decision by a hearing officer. Petitioner sought judicial review in the Genesee Circuit Court. The circuit court, Judith A. Fullerton, J., entered an order affirming the DSS order, ruling that the hearing officer's findings were supported by competent, material and substantial evidence. Petitioner appealed.

The Court of Appeals *held:*

1. The circuit court did not err in denying petitioner's request to compel the DSS to provide a trancript of the admininstative proceedings and to bear the cost of preparing the transcript. The Administrative Procedures Act does not require an agency to submit oral evidence in transcribed form unless requested by a party who shall pay for the transcription. A record of administrative proceedings is complete, for purposes of the APA provision which requires an agency to transmit to a court the record of proceedings where a party petitions the court for judicial review, if it contains the tape recordings of the oral evidence.

2. The circuit court did not err in finding that the hearing officer's decision was supported by competent, material and substantial evidence on the whole record and was not arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion. The hearing officer's conclusion that petitioner had received medicaid overpayments was supported by a lengthy

REFERENCES

Am Jur 2d, Administrative Law §§ 143, 399-403, 406.

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 95, 396.

Criminal prosecution or disciplinary action against medical practitioner for fraud in connection with claims under Medicaid, Medicare, or similar welfare program for providing medical services. 50 ALR3d 549.

report prepared by the hearing officer which indicated that the DSS' calculation of the overpayment amount was based on an audit of one hundred of petitioner's medicaid patient files which were randomly selected from petitioner's total of 617 files and that the amount of overpayments was statistically derived from the audit after the hearing officer examined all one hundred files in detail and heard extensive testimony concerning whether the medicaid payment received by petitioner related to unnecessary services.

2. The fact that the DSS can make claims for the refund of overpayments more than twelve months after the medical service has been provided, while petitioner is subject to a statutory twelve-month limitation for requesting medicaid payments, does not deny petitioner the equal protection of the law.

3. The hearing officer's choice of the extrapolation method utilized for the calculation of the overpayments was made after she considered expert testimony regarding two alternative methods and their sufficient accuracy and concluded that the method chosen had a ninety-five percent rate of accuracy. Therefore, the hearing officer's choice of method was not arbitrary or capricious and did not constitute an abuse of discretion.

4. The Court of Appeals concluded that the mere fact that the hearing officer is employed by the DSS, the agency which conducted the initial investigation of petitioner and issued the order for reimbursement, did not support petitioner's claim that the hearing officer exhibited constitutionally intolerable bias against petitioner.

5. The administrative proceedings did not violate petitioner's constitutional right to a jury trial. The mere fact that an administrative proceeding may result in the agency's recovery of previously disbursed funds does not render the proceedings a civil case at common law to which the constitutional right to a jury trial attaches. The Legislature did not violate the Seventh Amendment to the United States Constitution when it expressly authorized the DSS to administer the medicaid program and to recover medicaid overpayments from medical services providers such as petitioner. Furthermore, Const 1963, art 1, § 14, preserves the right to jury trial in civil cases only in causes of action which were part of the common law prior to its adoption or were similar in character to cases in which the right to a jury trial existed prior to its adoption. This case does not come within the purview of Const 1963, art 1, § 14.

6. The use of a sampling extrapolation formula for determining overpayments to physicians under the medicaid program is

not arbitrary, capricious or invidiously discriminatory where there is an opportunity to rebut the initial determination of overpayment. In this case, petitioner had an opportunity to rebut and to have the initial determination of $72,775.98 over-payment eventually reduced to $57,844.51.

7. The DSS audits of petitioner's medicaid patient files conducted prior to 1978, which did not reveal any overpayments, did not provide petitioner a basis to believe that his medicaid billing procedures completely and always complied with the requirements of the medicaid program. The doctrine of equitable estoppel does not apply, as petitioner argued, to estop the DSS from claiming a refund for medicaid overpayments made to petitioner for unnecessary medical services provided during 1978.

Affirmed.

1. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — APPEAL — RECORD OF PROCEEDINGS — TAPE RECORDINGS — EVIDENCE.

An agency, where a party to an administrative proceeding petitions for judicial review, is required to prepare and submit to the court an official record of the proceedings, including the evidence presented at any hearings under the provisions of the Administrative Procedures Act; an agency is not required to submit oral evidence in transcribed form unless requested by a party who shall pay for such transcription; a record of proceedings is complete for purposes of the Administrative Procedures Act if it contains the tape recordings of the oral evidence (MCL 24.286[2], 24.304[2]; MSA 3.560[186][2], 3.560[204][2]).

2. SOCIAL SERVICES — MEDICAL SERVICES PROVIDERS — OVERPAYMENTS — CONSTITUTIONAL LAW — EQUAL PROTECTION.

The statute which requires medical services providers under the medicaid program to submit claims for payments within twelve months from the date the services were provided, as applied to a medical services provider from whom the Department of Social Services seeks reimbursement for overpayments made over a period greater than twelve months, does not deny the medical services provider of the equal protection of the law; the Department of Social Services and the medical providers are not members of one class to whom a classification is applied which would violate the equal protection clause (Const 1963, art 1, § 2; MCL 400.111b[8]; MSA 16.490[21b][8]).

3. CONSTITUTIONAL LAW — DUE PROCESS — ADMINISTRATIVE LAW — BIAS OF DECISIONMAKER.

The right to a hearing before an unbiased and impartial adminis-

trative decisionmaker is a basic requirement of due process and the Administrative Procedures Act; the probability of actual bias on the part of the decisionmaker is too high to be constitutionally tolerable and a showing of actual bias is not needed where the decisionmaker (1) has a pecuniary interest in the outcome of the case, (2) has been the target of personal abuse or criticism from the party before him, (3) is enmeshed in other matters involving the parties, or (4) might have prejudged the case because of prior participation as an accuser, investigator, factfinder or initial decisionmaker (MCL 24.279; MSA 3.560[179]).

4. SOCIAL SERVICES — MEDICAL SERVICES PROVIDERS — OVERPAYMENTS — CONSTITUTIONAL LAW — JURY TRIAL.

A medical services provider from whom the Department of Social Services seeks reimbursement of medicaid overpayments is not entitled to a jury trial under the United States Constitution; the Legislature, by expressly authorizing the Department of Social Services to administer the medicaid program and to recover medicaid overpayments, had created new public rights and remedies and the Legislature does not violate the Seventh Amendment of the United States Constitution by delegating the enforcement of such rights and remedies to an administrative tribunal (US Const, Am VII; MCL 400.111a *et seq.*; MSA 16.490[21a] *et seq.*).

5. SOCIAL SERVICES — MEDICAL SERVICES PROVIDERS — OVERPAYMENTS — CONSTITUTIONAL LAW — JURY TRIAL.

A medical services provider from whom the Department of Social Services seeks reimbursement of medicaid overpayments is not entitled to a jury trial under the Michigan Constitution, which preserves the right to jury trial only in causes of action which were part of the common law prior to its adoption or were similar in character to cases in which the right to jury trial existed prior to its adoption; proceedings within the Department of Social Services to recover medicaid overpayments from a medical services provider are not within the purview of the constitutional provision regarding the right to jury trial in civil cases (Const 1963, art 1, § 14; MCL 400.111a[5][d]; MSA 16.490[21a][5][d]).

6. SOCIAL SERVICES — MEDICAL SERVICES PROVIDERS — OVERPAYMENTS — STATISTICAL EXTRAPOLATION FORMULA.

The Department of Social Services' use of a statistical extrapolation formula for determining overpayment received by a provider of medical services to medicaid recipients was not error where the use of the formula was not arbitrary, capricious, or

invidiously discriminatory and where there was an opportunity for the provider to rebut the initial determination of overpayment.

7. Estoppel — Equity.

Estoppel arises where one by his acts, representations, or silence when he ought to speak, intentionally or through culpable negligence induces another to believe in the existence of those facts to his detriment.

*D. Craig Henry,* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *William R. Morris,* Assistant Attorney General, for respondent.

Before: Beasley, P.J., and D. F. Walsh and Hood, JJ.

Beasley, P.J. On February 15, 1985, respondent, Michigan Department of Social Services, entered an order directing petitioner, Raiford Tomlin, D.O., to reimburse the DSS for medicaid overpayments already made to petitioner for allegedly unnecessary treatment he had provided to his patients during 1978. In entering the order, the DSS expressly adopted the extensive findings of fact and conclusions of law previously made by the hearing officer in this matter and required the Medical Services Administration to calculate the final overpayment amount owed by petitioner based on the hearing officer's specific findings. On appeal, the parties agree that the hearing officer's findings led to a conclusion that petitioner had received medicaid overpayments in the amount of $57,844.51.

On April 8, 1985, petitioner filed a petition in the Genesee Circuit Court for review of the order entered by respondent DSS. On July 30, 1985, the circuit judge entered an order affirming the order of the DSS based on her finding that the hearing

officer's findings were supported by competent, material and substantial evidence. Petitioner appeals as of right.

In challenging the DSS order on appeal, petitioner raises numerous issues, but has failed to furnish a transcript of the proceedings conducted before the hearing officer. In his first issue on appeal, petitioner argues that the circuit judge erred in denying his motion to compel respondent to provide a transcript of the administrative proceedings and to bear the cost of preparing the transcript. In making this argument, petitioner relies on MCL 24. 304(2); MSA 3.560(204)(2), which provides in pertinent part:

> Within 60 days after service of the petition, or within such further time as the court allows, the agency shall transmit to the court the original copy of the entire record of the proceedings, unless parties to the proceedings for judicial review stipulate that the record be shortened.

Although this language from § 104(2) of the Administrative Procedures Act indicates that, on appeal, the DSS was required to provide the entire record of the administrative proceedings, the specific definition of an "official record" included in § 86 of the APA reveals that the DSS was not required to transcribe, at its own cost, the record of oral proceedings. MCL 24.286(2); MSA 3.560(186)(2) expressly states:

> Oral proceedings at which evidence is presented shall be recorded, but need not be transcribed unless requested by a party who shall pay for the transcription of the portion requested except as otherwise provided by law.

The definition of "official record" in the above

statute makes it clear that a record of administrative proceedings is complete for purposes of MCL 24.304(2); MSA 3.560 (204)(2) if it contains the tape recordings of the oral evidence. There is no requirement that the agency submit the oral evidence in transcribed form other than upon request "by a party who shall pay for the transcription."

In reaching this conclusion, we recognize that this Court has previously held, in *Justewicz v Hamtramck Civil Service Comm*,[1] that an agency has the burden of producing the transcripts necessary for insuring meaningful judicial review. However, we also note that the *Justewicz* Court merely held that the agency had to physically procure a transcript upon request and did not address the issue of whether the agency was required to pay for the transcription. Thus, we do not believe the decision in *Justewicz* controls the issue raised by petitioner in this appeal. Therefore, based on the clear statutory language above, we conclude that the circuit judge did not err in denying petitioner's motion to require respondent DSS to provide, at its own cost, a transcript of the administrative proceedings.

Although a petitioner's failure to provide a transcript of the administrative proceedings may sometimes preclude meaningful appellate review, we believe the lower court records provided in this case allow for review of the remaining issues raised by petitioner on appeal. This is so, since the hearing officer, in a forty-one-page report, extensively discussed the detailed facts that led to her ultimate findings concerning petitioner's receipt of medicaid overpayments. The hearing officer's report indicates that the DSS calculation of the overpayment amount was based on statistical sampling

[1] 65 Mich App 555; 237 NW2d 555 (1975).

procedures utilized during an audit of petitioner's medicaid patient files for calendar year 1978. The audit revealed that petitioner provided services to 617 medicaid patients during 1978. The DSS auditor selected a random sample of one hundred of petitioner's 1978 medicaid patients and analyzed, in detail, the propriety of the medicaid payments made to petitioner for the services he had provided to those one hundred patients.

Based on the detailed audit conducted by the DSS on the one hundred randomly selected patient files, a rate of overpayment was determined. The statistical rate of overpayment was then projected over the entire 617 medicaid patient population in order to arrive at a total overpayment amount for the services provided by petitioner in 1978. In this case, the DSS's original estimate of overpayments was $72,775.98. Following a conference with petitioner, the overpayment amount was recalculated to $67,479.66. Subsequently, after applying the hearing officer's detailed findings on the asserted overpayments made to petitioner for services provided to the randomly selected one hundred patients, the overpayment calculation was adjusted to the final $57,844.51 amount.

On appeal, petitioner argues that the circuit judge erred when she found that the hearing officer's decision was supported by competent, material and substantial evidence on the whole record and was not arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion and, thus, should not be reversed pursuant to MCL 24.306(1); MSA 3.560(206)(1). Specifically, petitioner first argues that the hearing officer's detailed findings on the medicaid overpayment made to petitioner for services provided to the one hundred patients whose files were audited in detail by the DSS were not supported by competent, material

and substantial evidence. Our review of the hearing officer's detailed, forty-one-page report, which includes an extensive analysis of each individual overpayment claim made by the DSS on the one hundred audited patient files, leads us to conclude that petitioner's argument is without merit.

The report reveals that the hearing officer, after examining the individual patient files in detail and hearing extensive testimony, ascertained, item by item, whether the medicaid payments received by petitioner related to "unnecessary" services and, thus, were properly characterized as "overpayments." The total overpayment amount for these one hundred patients was then calculated by applying the hearing officer's detailed findings as to each overpayment item claimed by the DSS. The hearing officer's procedure in determining the overpayment amount for the one hundred randomly selected patients reveals that her detailed findings were supported by competent, material and substantial evidence.

In arriving at this conclusion, we note that petitioner only makes two specific allegations in order to support his claim that the hearing officer's decision was not supported by the evidence. First, petitioner alleges that the hearing officer failed to consider that the DSS received reimbursement from a patient's insurer for the overpayments related to that patient. However, even if the hearing officer did fail to address this allegation, such a failure does not affect our conclusion that the hearing officer's determination of the overpayment amount was supported by substantial evidence. Petitioner does not argue that the reimbursed amount was not properly characterized as an "overpayment." Thus, the hearing officer properly included this improper individual overpayment amount in the total overpayment amount

related to the one hundred patients which was used as a base figure for statistical extrapolation over the entire 617 patient population. The fact that the individual overpayment amount may have eventually been reimbursed to the DSS does not mandate its exclusion from the statistical base figure, since the individual overpayment indicates overpayments expected to be found in the remaining 517 patient files which would not have been reimbursed. The alleged reimbursement would only relate to the individual patient's account and would, at most, only require the DSS to credit petitioner's total overpayment amount for the specific individual amount allegedly reimbursed. Such a reimbursement credit would not require recalculation of the total overpayment amount and would not lead to a conclusion that the hearing officer's decision was not supported by substantial evidence.

Second, petitioner points to a specific medical test performed on two separate, individual patients. The hearing officer found that medicaid payments were proper for the patient whose test result was normal and were improper for the patient whose test result was abnormal. However, this fact alone does not lead to a conclusion that the hearing officer's decision was not supported by the evidence. The hearing officer noted as follows in her report:

> The determination of medical necessity of medical tests is based on the history, physical examination and findings contained in the entries on the medical chart. Abnormal test results do not justify ordering a test. Negative tests are reimbursed if properly ordered; positive tests are not reimbursed if they were not medically necessary when ordered.

We agree with the hearing officer's statement and, thus, conclude that the hearing officer could properly find that petitioner improperly ordered a test on a patient even though the test results were subsequently abnormal.

Petitioner next argues that the hearing officer's decision denying him medicaid payments for certain services provided to his patients during 1978, for which he allegedly could have received medicaid payments, was arbitrary and capricious, and constituted an abuse of discretion. However, petitioner concedes that he did not claim medicaid payment for these services until the audit process revealed that he was liable for the reimbursement of medicaid overpayments, which was well over a year after he had rendered the services. MCL 400.111b(8); MSA 16.490(21b)(8) requires medical services providers to submit claims for payments within twelve months from the date the services were provided. Since petitioner failed to submit his claims related to services provided in 1978 within twelve months from the time of service, the hearing officer properly denied him medicaid payment for such services.

Petitioner goes on to claim that the twelve-month limitation for requesting medicaid payments denies him equal protection of the law, in violation of Const 1963, art 1, § 2, for the reason that the DSS can make claims for the refund of overpayments more than twelve months after the service has been provided. This claim is completely without legal merit. Petitioner and the DSS are not similarly situated parties for purposes of equal protection analysis. Petitioner is the provider of medical services and the party who must bill the DSS for medicaid payments related to the services provided. The DSS, on the other hand, administers the medicaid program by making payments to

medical service providers upon being billed for such services. After making medicaid payments, the DSS may audit the propriety of a medical service provider's charges to medicaid and claim a refund for any improper charges.[2] In addition, we note that the twelve-month limit applies to all medical service providers. Since no classification exists between parties in like positions in this medicaid payment situation, no factual or legal basis exists to support petitioner's equal protection claim.

Petitioner goes on to argue that the hearing officer arbitrarily and capriciously selected a method for extrapolating the overpayment total for the one hundred patient files audited in detail to arrive at an overpayment total for the entire 617 patient population served by petitioner during 1978. We disagree. In her report, the hearing officer extensively discussed the relative merits of two alternative statistical methods of extrapolating the one hundred patient overpayment total. She noted that calculation of the overpayment under method No. 1 produced a range from $62,-860 to $72,098, with a mid-point of $67,479.66, and that calculation of the overpayment under method No. 2 produced a range from $45,900 to $73,800, with a midpoint of $59,811.24. After noting that the expert testimony revealed that each method was sufficiently accurate under the accepted standard practice of mathematics and statistics, the hearing officer adopted the midpoint under method No. 1 as the starting point for her detailed review. The hearing officer specifically found that, under method No. 1, one could be ninety-five percent confident that the actual overpayment was between $62,860 and $72,098, that this range was a tighter range than that resulting under method

---

[2] MCL 400.111a(5)(d); MSA 16.490(21a)(5)(d).

No. 2, that this range was included in the wider method No. 2 range, and that it was mathematically more precise than the method No. 2 range. Based on these specific findings, we conclude that the hearing officer's decision to adopt the statistical results under method No. 1 was not arbitrary or capricious and did not constitute an abuse of discretion.[3]

In reaching this conclusion, we note that on appeal petitioner does not challenge the hearing officer's specific findings, but merely asserts that the hearing officer chose method No. 1 since it was more favorable to the DSS. Petitioner fails to point to any evidence supporting his allegation of bias on the part of the hearing officer other than the fact that the hearing officer is employed by the DSS. Petitioner goes on to make a general assertion that he was denied his constitutional right to due process based solely on the fact that the hearing officer was an employee of the agency that made the initial overpayment determination (DSS).

In *City of Livonia v DSS*,[4] the Michigan Supreme Court recently set out the proper standard for reviewing the impartiality of an administrative decisionmaker. The *Livonia* Court first noted that the right to a hearing before an unbiased and impartial administrative decisionmaker is a basic requirement of due process and of MCL 24.279; MSA 3.560(179). The Court then stated that actual bias need not be shown, but that the situation must be one where the probability of actual bias on the part of the decisionmaker is too high to be constitutionally tolerable. The *Livonia* Court then noted four situations presenting such an intolerable risk:

---

[3] *Quality Clinical Services, Inc v DSS*, 141 Mich App 597; 367 NW2d 390 (1985).

[4] 423 Mich 466, 508-512; 378 NW2d 402 (1985).

" . . . where the judge or decisionmaker

"(1) has a pecuniary interest in the outcome;

"(2) 'has been the target of personal abuse or criticism from the party before him';

"(3) is 'enmeshed in [other] matters involving petitioner . . .'; or

"(4) might have prejudged the case because of prior participation as an accuser, investigator, factfinder or initial decisionmaker."[5]

In the within case, petitioner bases his claim of constitutionally intolerable bias solely on the fact that the hearing officer is employed by respondent DSS. We do not believe the mere fact that the decisionmaker is employed by the agency conducting the initial investigation and making the initial decision falls within any of the four situations of intolerable risk of actual bias on the part of the decisionmaker. We believe this result is obvious in the *Livonia* decision itself, since the Court declined to find that the petitioner had been denied his right to an unbiased and impartial decisionmaker where the director of the DSS had reviewed the findings of the agency's own hearing officer and had then made the final determination. Our finding on this issue is especially appropriate in this case where the hearing officer was not involved in any way with the initial investigation of petitioner's patient files and with the initial overpayment determination. Therefore, we hold that petitioner was not denied his right to an impartial and unbiased decisionmaker in this case.

Petitioner further asserts that, even if the hearing officer was an impartial decisionmaker, he had a constitutional right to a jury trial in this medicaid overpayment matter under US Const, Am VII; Const 1963, art 1, § 14. We disagree. The mere

[5] *Id.,* p 509, quoting *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975).

fact that an administrative proceeding may result in the agency's recovery of previously disbursed funds does not render it a civil case at common law to which the constitutional right to a jury trial attaches. The Legislature, by enacting MCL 400.111a *et seq.;* MSA 16.490(21a) *et seq.,* in 1980, expressly authorized the DSS to administer the medicaid program and to recover medicaid payments made to a provider in excess of the reimbursement to which he is entitled. In such a situation, where the Legislature has created new public rights and remedies, the Legislature does not violate the Seventh Amendment of the United States Constitution by delegating the enforcement of the new rights and remedies to an administrative tribunal.[6]

Furthermore, Const 1963, art 1, § 14, preserves the right to jury trial only in causes of action which were part of the common law prior to its adoption or were similar in character to cases in which the right to a jury trial existed prior to its adoption.[7] The Legislature's authorization of the DSS, in 1980, to recover medicaid overpayments pursuant to MCL 400.111a(5)(d); MSA 16.490(21a)(5)(d) was not a civil cause of action existing at the time the state constitution was adopted. In addition, the recovery of medicaid overpayments is not an action similar in character to cases in which the right to a jury trial existed at the time of adoption of the state constitution. Therefore, we conclude that petitioner did not have a constitutional right to a jury trial in the within case.

---

[6] See *Atlas Roofing Co, Inc v Occupational Safety & Health Review Comm,* 430 US 442; 97 S Ct 1261; 51 L Ed 2d 464 (1977) (Review of civil fines imposed on employers for violations of OSHA by administrative agency does not violate the Seventh Amendment right to a jury trial.)

[7] See *Conservation Dep't v Brown,* 335 Mich 343, 346; 55 NW2d 859 (1952); *In re Colon,* 144 Mich App 805, 817-819; 377 NW2d 321 (1985).

Petitioner also claims that the hearing officer abused her discretion by extrapolating over the entire year overpayments which resulted from a concededly improper billing procedure used by petitioner during only one month of 1978. This claim is without factual merit. The hearing officer noted that petitioner admitted using an improper billing procedure during May, 1978. However, the hearing officer did not extrapolate these May overpayments over the entire year. In fact, no extrapolation of overpayments over time was ever done by the DSS or the hearing officer. The only extrapolation of data in this matter was from the overpayments revealed by the detailed audit of one hundred randomly selected patient files to the entire 617-patient population. These randomly selected one hundred patients did not receive all, or even an unusually extensive amount, of medical services in May, 1978, when the billing procedure was concededly improper. Thus, the overpayments related to these one hundred patients were representative of petitioner's services during the entire year and were properly applied to the entire patient population in order to calculate a total overpayment figure. Therefore, we find that the hearing officer did not abuse her discretion in concluding:

> The Petitioner gave several examples of errors that only occurred during part of the audit year. The evidence presented failed to establish his contention that extrapolation of those errors over the entire population was statistically incorrect.

Petitioner is, in reality, challenging the propriety of the statistical random-sampling procedures used by the DSS to calculate the total medicaid overpayment amount. However, in *Quality*

*Clinical Laboratories, Inc v DSS*,[8] this Court reviewed this precise issue and found that the use of a sampling extrapolation formula for determining overpayments to physicians under the medicaid program is not arbitrary, capricious or invidiously discriminatory where there is an opportunity to rebut the initial determination of overpayment. In the within case, petitioner clearly had an opportunity to rebut the DSS's initial determination of a $72,775.98 overpayment. In fact, the hearing officer's detailed review resulted in a determination that the overpayment amount was the lesser sum of $57,844.51. Therefore, we conclude that the use of the statistical extrapolation formula in this case was not arbitrary or capricious and did not constitute an abuse of discretion.

Last, petitioner argues that the doctrine of equitable estoppel applies in this situation so as to bar the DSS from claiming any medicaid overpayments to petitioner. Petitioner bases this argument on his assertion that the DSS had performed an investigation into his medicaid accounts prior to 1978 and had found no improper medicaid payments. Petitioner alleges that he used the same procedures and methods in providing patient service during 1978 as he had during the prior audit period. Since the prior DSS audit resulted in no overpayment claim, he argues that the DSS led him to reasonably believe his procedures complied with the medicaid program requirements and, thus, the DSS should be estopped from challenging these same procedures subsequently used in 1978.

In *Hastings Mutual Ins Co v Hartford Accident & Indemnity Co*,[9] this Court recently described when the application of equitable estoppel is appropriate:

[8] *Supra.*

[9] 134 Mich App 662, 667; 352 NW2d 292 (1984).

Estoppel arises where one by his acts, represen-
tations, or silence when he ought to speak, inten-
tionally or through culpable negligence induces
another to believe in the existence of certain facts
and that person justifiably relies on the existence
of the assumed facts to his detriment.

The key in this case is whether petitioner *justifi-
ably* relied on the results of the prior DSS audit in
deciding what services to provide to his medicaid
patients in 1978. We believe he did not. The mere
fact that a prior DSS audit did not result in a
claimed overpayment does not provide a basis for
a trained, professional medical-service provider to
blindly believe that his procedures completely and
always comply with the requirements of the medi-
caid program. The prior audit result in this case
did not provide petitioner, who is a medical profes-
sional trained and licensed to provide proper and
necessary medical services, with a basis to justifi-
ably believe that he could receive medicaid pay-
ments for unnecessary medical services provided
during 1978 simply by following his prior proce-
dures. Therefore, we conclude that the doctrine of
equitable estoppel does not apply in this situation
so as to estop the DSS from claiming a refund for
medicaid overpayments made to petitioner for un-
necessary medical services provided during 1978.

In summary, we find that the circuit judge prop-
erly found that the DSS was not required to provide
petitioner with a transcript of the administrative
hearings conducted in this matter at its own ex-
pense. In addition, we find that the circuit judge
properly found that the hearing officer's decision
concerning the medicaid overpayments made to
petitioner was supported by competent, material
and substantial evidence and was not arbitrary or
capricious and did not constitute an abuse of dis-

cretion. Furthermore, we find that the DSS was not estopped from claiming a refund for the 1978 medicaid overpayments made to petitioner based on the results of a prior audit.

Affirmed.