## MICHIGAN COUNCIL OF TROUT UNLIMITED v DEPARTMENT OF MILITARY AFFAIRS

Docket No. 161435. Submitted June 21, 1995, at Lansing. Decided September 1, 1995, at 9:35 A.M.

Michigan Council of Trout Unlimited and Anglers of the AuSable, Inc., brought an action in the Ingham Circuit Court against the Department of Military Affairs, alleging that the defendant violated the Michigan Freedom of Information Act, MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, in failing to comply quickly and fully with the plaintiffs' request for certain records associated with Camp Grayling, a training site administered by the defendant for the Michigan Army National Guard. The defendant made some of the requested records available to the plaintiffs. The court, Peter D. Houk, J., determined that the records that were withheld by the defendant were federal or quasi-federal documents that are exempt from disclosure under exceptions to the federal and the state Freedom of Information Acts for preliminary intraagency communications, 5 USC 552(b)(5); MCL 14.243(1)(d); MSA 4.1801(13)(1)(d). The court also determined that the plaintiffs had prevailed in part and that they were entitled to attorney fees but not punitive damages. The plaintiffs appealed. The parties stipulated a remand to the trial court for a decision regarding whether the trial court had subject-matter jurisdiction over the plaintiffs' action. On remand, the trial court dismissed the action for lack of jurisdiction.

The Court of Appeals *held:*

1. The trial court erred in concluding that it lacked subject-matter jurisdiction. The Department of Military Affairs is indisputably a public body within the meaning of MCL 15.232(b); MSA 4.1801(2)(b), and the documents in question are clearly public records within the meaning of MCL 15.232(c); MSA 4.1801(2)(c). Accordingly, the trial court has jurisdiction pursuant to the state Freedom of Information Act. 5 USC

### REFERENCES

Am Jur 2d, Freedom of Information Acts §§ 13, 102, 104, 487, 570.
See ALR Index under Freedom of Information Acts; National Guard or Militia; Punitive Damages.

552(a)(4)(B) waives sovereign immunity to confer on federal district courts jurisdiction to enforce the federal Freedom of Information Act. In the absence of a clear statutory mandate waiving sovereign immunity for actions brought in state court, the circuit court may not entertain an action pursuant to the federal Freedom of Information Act to compel federal agents to release documents subject to their control.

2. The documents at issue are exempt from disclosure under MCL 15.243(1)(d); MSA 4.1801(13)(1)(d) as records or information specifically described and exempted from disclosure by statute. Documents are exempt under § 13(1)(d) if, as in this case, disclosure is prohibited by federal regulations. Even in the absence of federal regulations, disclosure may be denied pursuant to § 13(1)(D) because the documents fall within the deliberative process privilege of 5 USC 552(b)(5).

3. Punitive damages may not be awarded pursuant to MCL 15.240(5); MSA 4.1801(10)(5) where, as here, there has been no court-ordered disclosure of documents.

4. By failing to brief properly the issue, the plaintiffs have implicitly abandoned their claim that the award of attorney fees should have been higher. In any event, it does not appear that the amount awarded was unfair under the circumstances of this case.

Affirmed in part and reversed in part.

1. RECORDS — FREEDOM OF INFORMATION ACT — DEPARTMENT OF MILITARY AFFAIRS.

The Department of Military Affairs is a public body over whom a circuit court has jurisdiction under the Michigan Freedom of Information Act to compel the production of documents in its possession, except for documents whose disclosure is governed by federal regulations or is exempt from disclosure under the federal Freedom of Information Act (MCL 15.232[b],[c]; MSA 4.1801[2][b],[c]; 5 USC 552 *et seq.*).

2. RECORDS — FREEDOM OF INFORMATION ACT — CIRCUIT COURTS.

A circuit court lacks jurisdiction to entertain an action pursuant to the federal Freedom of Information Act to compel federal agents to release documents subject to their control (5 USC 552[a][4][B]).

3. RECORDS — FREEDOM OF INFORMATION ACT — STATUTORY EXEMPTION.

A document is exempt from disclosure pursuant to the Michigan Freedom of Information Act where disclosure is prohibited by federal regulations (MCL 15.243[1][d]; MSA 4.1801[13][1][d]).

4. Records — Freedom of Information Act — Punitive Damages.
   Punitive damages may not be awarded against a public body in an action pursuant to the Michigan Freedom of Information Act in the absence of any court-ordered production of documents (MCL 15.240[5]; MSA 4.1801[10][5]).

*White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *Thomas A. Baird*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Irene M. Mead* and *Daniel M. Greenberg,* Assistant Attorneys General, for the defendant.

Before: Saad, P.J., and Taylor and P. J. Conlin,* JJ.

Per Curiam. Plaintiffs appeal an order of the Ingham Circuit Court dismissing their complaint for lack of jurisdiction. We reverse the court's jurisdictional holding, but affirm its decision denying plaintiffs' claims on the merits.

I

Camp Grayling is located in the northern Lower Peninsula. It is administered by defendant Department of Military Affairs as a training site for the Michigan Army National Guard. The AuSable and Manistee Rivers flow within or along its borders.

Plaintiff Michigan Council of Trout Unlimited is a statewide organization whose purpose is the restoration, preservation, and enhancement of Michigan's cold-water resources. Plaintiff Anglers of the AuSable, Inc., is an organization created specifically to protect the AuSable River and its fishery.

In 1987, plaintiffs learned of defendant's plans to

* Circuit judge, sitting on the Court of Appeals by assignment.

expand Camp Grayling. Fearing the expansion might affect the rivers, both plaintiffs requested documents from defendant pursuant to the Michigan Freedom of Information Act (MFOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.* When defendant failed to respond quickly and completely, plaintiffs filed suit on October 3, 1988, alleging violation of the MFOIA. On the same date, the circuit court issued a show cause order requiring defendant to file its answer, motions, and other responses on or before October 11, 1988. Before and at the show cause hearing held on October 14, 1988, defendant provided plaintiffs with various records. At the hearings, seven records remained in dispute, designated defendant's Exhibits 1, 2, 2a, 3, 4, 5, and 6. The defendant moved for summary disposition on grounds of jurisdiction, failure to state a claim, and mootness. After hearing argument and reviewing the records *in camera,* the court denied the defendant's motion but agreed with defendant that the disputed documents were not subject to disclosure. However, the court also granted plaintiffs' request to conduct discovery for the limited purpose of determining whether there were other documents that were within the scope of their requests but that had not been provided.

Plaintiffs thereafter moved for reconsideration and also moved for summary disposition of all outstanding issues other than their request for costs and attorney fees. On June 2, 1989, the court denied both of plaintiffs' motions, but deferred decision on the question of costs and attorney fees. The court held that all outstanding documents were exempt from disclosure pursuant to provisions of the Michigan and federal FOIAs. In particular, it held that all the documents were federal or quasi-federal draft documents, exempt from disclo-

sure under the preliminary intraagency communication exceptions to the FOIAS.

On October 14, 1988 this Court entertained expedited oral arguments on plaintiffs' complaint for disclosure of six documents pursuant to the Michigan Freedom of Information Act (MFOIA) and the federal Freedom of Information Act (FOIA). Three of the documents, Exhibits 1, 2 and 3, were all held by this Court to be quasi-federal draft documents not subject to disclosure under the preliminary intra-agency communication exceptions of the FOIA and MFOIA. 5 USC 551(b)(5); MCL 15.243(1)(d); MSA 4.1801(13)(1)(d); AR 200-2; National Guard Regulation 340-17 (ANGR 12-30); and *Soave v Michigan Department of Education,* 139 Mich App 99; 360 NW2d 194 (1984).

It remains apparent to the Court that the Michigan National Guard has many uniquely federal aspects with regard to organization, command and finance. Since the Michigan Army National Guard is partially governed by federal law, reliance upon both the MFOIA, MCL 15.243(1)(d); MSA 4.1801(13) (1)(d) and the federal legal authority cited above is consistent with the Legislature's intention to protect information otherwise exempted from disclosure by "statute."

\* \* \*

The underlying interest of the Exception 5 defense is to protect the governmental decisionmaking process from the chilling effect on creative thought which comes from scrutiny of preliminary work. 5 USC 552(b)(5). Notwithstanding that decisions of the department which are dependent upon appropriations are not final, nor even within the purview of the Michigan Department of Military Affairs, it is clear to the Court that the public interest is better served through disclosure of completed reports rather than incorrect and incomplete drafts which are uncertain in content, yet certain to mislead. The disclosure of useless draft reports in this case would have no effect on those

preliminary decisions which have already been made, but would clearly stifle the free and creative production of future draft reports which are necessary to the effective functioning of government.

The court therefore denied plaintiffs' motion for reconsideration. For similar reasons, the court denied plaintiffs' motion for summary disposition regarding an eighth document that turned up during discovery, a preliminary draft of the Environmental Management Analysis and Plan (EMAP) dated June 1987. The court found that it was a draft document with handwritten notes in the margins on many pages, and held that it was exempt from disclosure for the same reasons as the other draft documents.

Plaintiffs filed a claim of appeal, but the appeal was rejected because the order was not a final order. Plaintiffs then moved for entry of judgment and award of attorney fees. By order dated June 14, 1990, the circuit court held that defendant violated the FOIA at least in part, but denied plaintiffs' request for disclosure of the remaining documents, and also denied their request to segregate exempt from nonexempt materials. The trial court granted in part plaintiffs' request for attorney fees, but denied their request for punitive damages.

Plaintiffs appealed as of right, and the case was scheduled to be submitted to a panel of this Court for oral argument on March 10, 1992. At the request of the panel, the Chief Clerk of the Court of Appeals informed the parties by letter dated March 4, 1992, that the panel had concerns regarding the jurisdiction of a Michigan court to award relief to plaintiffs in light of the federal role in this case:

This case is scheduled for oral argument on

Tuesday, March 10, 1992. The panel wishes counsel to address the question of whether this case should be remanded to the trial court so that the issue of jurisdiction can be addressed. It appears to the panel that all decisions relating to the denial of requests for information were made by federal officials in the Pentagon and that no state official has the authority to grant or deny such requests. The panel is concerned that state courts may lack the authority to compel federal officials to comply with any state court orders and that with respect to the denial of the release of federal documents, the state courts may lack jurisdiction. This issue was not addressed by the trial court and the panel wishes to consider whether that issue should be addressed by the trial court in the first instance by means of an order of remand.

The parties then stipulated that the case be remanded to the circuit court for a decision regarding jurisdiction. An order remanding the case and retaining no jurisdiction was entered by this Court on March 25, 1992.

After the circuit court received briefs and heard oral argument, it issued an opinion on January 27, 1993, holding that plaintiffs' complaint should be dismissed for lack of jurisdiction for the following reasons:

Under the militia clauses of the federal Constitution, states have maintained National Guard or militia units throughout our history. And, as the nation has evolved into a world power, federal control over the National Guard has evolved from minimal to all encompassing.

More recently, the issue of federal supremacy over the National Guard was addressed in *Perpich v Department of Defense,* 496 US 334; 110 S Ct 2418; 110 L Ed 2d 312 (1990), where the Court held that "federal power [is supreme] in the area of military affairs." 496 US at 351. Furthermore, the

Court noted that "any constitutional entitlement to a separate [state] militia . . ." was satisfied by 32 USC § 109(c), which provides "that in addition to its National Guard, a state may provide and maintain *at its own expense* a defense force that is exempt from being drafted into the Armed Forces of the United States." 496 US at 352. (Emphasis added.)

In the instant case, the Michigan National Guard is not a separate defense force maintained at the sole expense of the State of Michigan. Furthermore, defendant has made numerous averments that the documents in controversy were created at federal expense and are under the control of the federal government and not subject to release without specific authorization from federal officials in Washington. Therefore, the documents in question are clearly under the exclusive and supreme control of the federal government and this court does not have jurisdiction.

Disclosure of the following documents remains in contention:

1. Preliminary Draft Environmental Management Analysis and Plan for Camp Grayling.

2. Preliminary Draft Environmental Impact Statement dated August 1988.

2a. Letter dated October 7, 1988 from Paul Stryder to Greg Huntington, an employee of defendant, directing revisions to Item 2.

3. Preliminary Draft Environmental Impact Statement dated December 1987.

4. Training Ranges Manual or FM25-7.

5. Preliminary Report, Environmental Noise Assessment No. 52-34-0426-84, Camp Grayling, 1-17 August 1983.

6. Draft Report, Environmental Noise Assessment No. 52-34-0451-87, Noise Contours for Aircraft Operations at Camp Grayling, Michigan, July 1987.

7. Preliminary Draft Environmental Management Analysis and Plan dated June 1987.

## II

Plaintiffs argue that the trial court erred on remand when it held that it lacked jurisdiction to consider their claims. Plaintiffs make a straightforward statutory argument. They argue that defendant is a "public body" within the meaning of § 2(b)(i) of the MFOIA, MCL 15.232(b)(i); MSA 4.1801(2)(b)(i), because "it is a state . . . agency [or] department," noting that the department is created and organized pursuant to Const 1963, art 3, § 4 and MCL 16.104; MSA 3.29(4). Plaintiffs contend that the documents requested from defendant are "public records" within the meaning of §§ 2(c) and (e) of the MFOIA, MCL 15.232(c), (e); MSA 4.1801(2)(c), (e). Plaintiffs requested those documents within the meaning of § 5(1), MCL 15.235(1); MSA 4.1801(5)(1), and those requests were denied within the meaning of §§ 5(1) and (3), MCL 15.235(1), (3); MSA 4.1801(5)(1), (3). Plaintiffs therefore contend that the circuit court had jurisdiction under the MFOIA to compel production of the documents in question, which were admittedly in the possession of defendant.

Plaintiffs argue that the circuit court erred in accepting defendant's argument that plaintiffs are in fact seeking an order against federal officials. While willing to concede that defendant's personnel may in some instances be agents of the federal government, plaintiffs contend that they are also state officials. The mere fact that defendant has a relationship with the federal government is irrelevant.

Defendant responds that plaintiffs' approach is

simplistic because it ignores the dual state-federal character of defendant, in which the state aspect is subordinate to and governed by the federal aspect. Defendant notes that US Const, art I, § 8 provides in part:

The Congress shall have Power . . .

* * *

(15) To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

(16) To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and Authority of training the Militia according to the discipline prescribed by Congress.

In *Perpich, supra,* the Supreme Court considered a constitutional challenge by the governor of Minnesota to a statute that limits the governor's authority to withhold consent to National Guard training outside the United States. In a unanimous opinion, the Supreme Court held that the federal statute was not an unconstitutional abridgment of the governor's implied powers as commander in chief of the state militia. In doing so, the Court reviewed the history of federal statutory law regarding the National Guard. The Court described the dual enlistment provisions that have been in effect since 1933.

Since 1933 all persons who have enlisted in a State National Guard unit have simultaneously enlisted in the National Guard of the United States. In the latter capacity they became a part of the Enlisted Reserve Corps of the Army, but unless and until ordered to active duty in the Army, they retained their status as members of a sepa-

rate State Guard unit. Under the 1933 Act, they could be ordered into active service whenever Congress declared a national emergency and authorized the use of troops in excess of those in the Regular Army. . . .

Thus, under the "dual enlistment" provisions of the statute that have been in effect since 1933, a member of the Guard who is ordered to active duty in federal service is thereby relieved of his or her status in the State Guard for the entire period of federal service. [496 US 345-346.]

Defendant argues that this dual nature of the National Guard is recognized by state law. MCL 32.601; MSA 4.678(201) provides:

The national guard consists of the organizations and units which are, under the laws and regulations of the United States, prescribed as the portion of the national guard of the United States apportioned and assigned to this state in accordance with a troop basis approved by the governor, and such other officers, warrant officers and enlisted personnel that may be required.

MCL 32.503; MSA 4.678(103) provides:

It is the intent of this act and other acts of this state affecting the Michigan national guard, the Michigan defense force and the unorganized militia to conform to applicable acts and regulations of the United States. The laws of this state shall be construed to effect this intent and anything to the contrary shall be held to be null and void as long as the subject matter shall have been acted upon by the United States. Upon any subject not acted upon with reference to these matters by the United States, any law or regulation of this state shall be in full force and effect.

Defendant notes that Congress has authorized

the President to prescribe regulations necessary to govern the National Guard, and has also authorized the secretary of each military department to prescribe regulations. 32 USC 110. Defendant also notes that it is textbook law that federal agency regulations have the force of federal statutory law, and that under the Supremacy Clause of the United States Constitution such law overrides any contrary law.

Citing federal regulations that reserve the authority to consider FOIA requests to the Chief of the National Guard Bureau, defendant argues that the courts of this state are without jurisdiction to order the production of records where such production is governed by federal law, and where the decision whether to grant or deny production is made by federal officials. Defendant argues that because the federal FOIA, 5 USC 552(a)(4)(B), vests jurisdiction in the federal district court to consider claims under the federal act, a Michigan court has no jurisdiction to entertain an action against federal officials, whether under the Michigan or the federal act.

We agree with plaintiffs that the circuit court erred in holding that it is without jurisdiction to entertain their complaint.

In *Joy v Two-Bit Corp,* 287 Mich 244, 253-254; 283 NW 45 (1938), quoted with approval in *Bowie v Arder,* 441 Mich 23, 39; 490 NW2d 568 (1992), our Supreme Court held:

> Jurisdiction over the subject matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action or under the particular facts is triable before the court in which it is pending, because of

some inherent facts which exist and may be developed during the trial.

Const 1963, art 6, § 13 provides that the "circuit court shall have original jurisdiction in all matters not prohibited by law." The circuit court's plenary power is further described in MCL 600.601, 600.605; MSA 27A.601, 27A.605.

Even though defendant may have a certain federal "aspect," it is indisputably a public body within the meaning of § 2(b) of the MFOIA. The documents in question are clearly "public records" within the meaning of § 2(c) of the MFOIA because they are writings used, in the possession of, or retained by a public body in the performance of an official function. The circuit court therefore had jurisdiction to entertain plaintiffs' complaint.

Whether the circuit court may provide an effective remedy in this case is another question. The United States, as sovereign, is immune from suit unless it waives its immunity and consents to be sued. Courts lack jurisdiction to entertain a suit against the United States unless the action is brought under an act of Congress specifically authorizing the action. Statutes authorizing suit against the United States are strictly construed. Because 5 USC 552(a)(4)(B) is an act of Congress conferring jurisdiction on the federal district court to enforce the federal FOIA, the United States has waived its sovereign immunity with respect to such actions in such courts. *O'Connor v United States,* 669 F Supp 317, 320 (D Nev, 1987), aff'd 935 F2d 275 (CA 9, 1991). Because there appears to be no clear statutory mandate waiving sovereign immunity for actions brought in state court, the circuit court may not entertain an action pursuant to the federal FOIA to compel the Chief of the National Guard Bureau to disclose documents en-

trusted to his care. Therefore, although the circuit court has jurisdiction to entertain an action against defendant under the MFOIA to compel production of the documents in defendant's possession, the court cannot reach the actions of federal agents under the federal FOIA.

We recognize that these considerations appear to leave the parties and the circuit court on the horns of a dilemma. On the one hand, the court may compel production of documents in defendant's possession pursuant to the state act. On the other hand, the court cannot compel federal agents to release documents subject to their control. The dilemma is avoided by application of the exemption contained in § 13(1)(d) of the MFOIA, to the analysis of which we now turn.

III

Section 13(1)(d) of the MFOIA exempts from disclosure records or information specifically described and exempted from disclosure by statute. The circuit court held that the records in question were exempted from disclosure by the federal FOIA, specifically 5 USC 552(b)(5), which exempts

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

Plaintiffs argue that the circuit court erred for a number of reasons. Plaintiffs contend that "agency" within the meaning of the federal FOIA is meant to include the federal government and its various branches, but not the states or agencies or political subdivisions of states. Therefore, the exemption relied upon, commonly called exemption

5, cannot apply here because it applies only to "inter-agency or intra-agency documents," which by definition must mean interfederal agency or intrafederal agency documents that are not at issue here.

In the alternative, plaintiffs argue that the documents in question do not meet the substantive requirements of exemption 5. Plaintiffs contend that the documents in question are not inter- or intraagency communications, and they are not the sort of documents that would be privileged from disclosure in litigation. According to plaintiffs, the most frequently invoked privileges that have been held to be incorporated in exemption 5 are the deliberative process privilege, the attorney-work-product privilege, the attorney-client privilege, the privilege for confidential commercial information, the expert witness privilege, and the privilege for air-crash-safety investigators' reports. Only the first privilege, sometimes called the "executive privilege," is at issue here. The policy underlying the privilege is explained in *Jordan v Dep't of Justice,* 192 US App DC 144, 163-164; 591 F2d 753 (1978):

> This privilege protects the "consultive functions" of government by maintaining the confidentiality of "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." The privilege attaches to inter- and intraagency communications that are part of the deliberative process proceeding the adoption and promulgation of an agency policy. There are essentially three policy bases for this privilege. First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to

discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided[,] not for matters they considered before making up their minds."

Two tests must be met for application of exemption 5. The communication must be predecisional, i.e., "antecedent to the adoption of an agency policy." *Jordan, supra* at 774. The communication must also be deliberative, i.e., "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v Rosen,* 173 US App DC 187, 195; 523 F2d 1136 (1975). Plaintiffs contend that none of the documents in question satisfies both tests.

We agree with the circuit court that the documents at issue are exempt from disclosure under § 13(1)(d) of the MFOIA, MCL 15.243(1)(d); MSA 4.1801(13)(1)(d). In *Soave v Dep't of Ed,* 139 Mich App 99, 102; 360 NW2d 194 (1984), this Court held that documents are exempt from disclosure if disclosure is prohibited by federal regulations. Defendant contends that all the documents in question are subject to federal regulations prohibiting their disclosure without federal approval. Plaintiffs do not contest this statement. Therefore, we hold that the trial court properly denied plaintiffs' demand for production of the documents at issue.

Even in the absence of federal regulations, disclosure was properly denied pursuant to § 13(1)(d) because the documents fall within the deliberative process privilege of exemption 5 of the federal FOIA. Contrary to plaintiffs' assertion, defendant is an "agency" entitled to invoke the federal exemption. The federal FOIA defines agency to include a "military department." 5 USC 552(e). "Military department" is defined as the Department of the

Army, the Department of the Navy, and the Department of the Air Force. 10 USC 101(a)(8). Pursuant to 10 USC 101(a)(6), a military department includes "all field headquarters, forces, reserve components, installations, activities and functions under the control or supervision of the Secretary of the department." 10 USC 101(c), which deals with reserve components generally, defines in subsection 1 "National Guard" to mean the Army and Air National Guards. While defendant has state status as the organized state militia pursuant to MCL 32.509; MSA 4.678(109), it is also an "agency" within the meaning of the federal FOIA in light of the above definitions.

We find that all but one of the documents in question are predecisional and deliberative documents, being draft documents created in connection with the process of preparing an environmental impact statement and other ancillary matters required by federal law. Although plaintiffs contend that Document No. 1 is not a draft document, the record does not support this assertion. The final version of Document No. 1 was provided to plaintiffs at the hearing on their motion for summary disposition on December 21, 1988. The trial court, at about that time, reviewed Document No. 1 and determined that it was a draft of the final product.

Document No. 4, the Training Ranges Manual, appears to be an Army field manual dealing with training ranges. Nothing in it indicates that is a draft or preliminary document. As such, it does not appear to be subject to exemption 5.[1]

---

[1] We note that the cover of the document states: "Requests from outside the US Government for release of this publication under the Freedom of Information Act or the Foreign Military Sales Program must be made to HQ TRADOC, Ft Monroe, VA 23651-5000." It therefore appears that this document, like the others, may not be released without federal approval.

Although the parties argue the applicability of the exemption provided in § 13(1)(n) of the MFOIA, MCL 15.243(1)(n); MSA 4.1808(13)(1)(n), the circuit court did not rely upon or analyze this exemption and we decline to consider the issue de novo. We note, however, that this exemption applies only to communications and notes within or between public bodies, and § 2(b)(1) defines a "public body" as including only state agencies and departments.

Finally, in light of our holding that the documents are not subject to disclosure under Michigan law because their disclosure is governed by federal regulations, we reject plaintiffs' contention that the circuit court erred in failing to separate the exempt from the nonexempt portions of the documents.

IV

Section 10(5) of the MFOIA, MCL 15.240(5); MSA 4.1801(10)(5), provides:

In an action commenced pursuant to this section, if the circuit court finds that the public body has arbitrarily and capriciously violated this act by refusal or delay in disclosing or providing copies of a record, the court shall, in addition to any actual or compensatory damages, award punitive damages in the amount of $500.00 to the person seeking the right to inspect or receive a copy of the public record. The damages shall not be assessed against an individual, but shall be assessed against the next succeeding public body, not an individual, pursuant to whose public function the public record was kept or maintained.

The circuit court refused to award punitive damages because there had been no "court ordered disclosure of any documents," citing *Jordan v Martimucci,* 101 Mich App 212; 300 NW2d 325

(1980). Plaintiffs contend that *Jordan's* require-
ment of a court-ordered disclosure is an incorrect
reading of the statute, and that under the facts of
this case plaintiffs should be awarded damages. We
disagree.

This Court's decision in *Jordan v Martimucci*
was based on its prior decision in *Bredemeier v
Kentwood Bd of Ed,* 95 Mich App 767, 773; 291
NW2d 199 (1980). In *Bredemeier,* this Court read
together § 10(5), quoted above, and § 5(3), MCL
15.235(3); MSA 4.1801(5)(3), which provides in part:

> If a circuit court, upon an action commenced
> pursuant to section 10, finds that a public body has
> failed to respond as provided in subsection (2), and
> if the court orders the public body to disclose or
> provide copies of the public record or a portion
> thereof, then the circuit court shall assess dam-
> ages as against the public body as provided in
> section 10(5).

Although § 10(5) only requires a finding of arbi-
trary and capricious refusal to abide by the MFOIA,
when it is read in conjunction with § 5(3), it is
clear that damages may be assessed only if the
court orders disclosure of a public record. The
circuit court therefore did not err in denying
plaintiffs' request for punitive damages in this
case.

v

Section 10(4) of the MFOIA, MCL 15.240(4); MSA
4.1801(10)(4), provides:

> If a person asserting the right to inspect or
> receive a copy of a public record or a portion
> thereof prevails in an action commenced pursuant
> to this section, the court shall award reasonable

attorneys' fees, costs, and disbursements. If the person prevails in part, the court may in its discretion award reasonable attorneys' fees, costs, and disbursements or an appropriate portion thereof. The award shall be assessed against the public body liable for damages under subsection (5).

Plaintiffs sought $10,459.50 for fees, costs, and expenses. The circuit court held that plaintiffs prevailed in part, inasmuch as their filing suit against defendant had a substantial causative effect on the delivery of the requested information. *Bredemeier, supra* at 772. Because they prevailed only in part, the court awarded plaintiffs $3,400 to be offset by the sum of $854 for defendant's properly assessed costs of search, review, and reproduction of the disclosed documents.

Plaintiffs contend that the trial court erred in not awarding a higher amount. Plaintiffs do not, however, describe what amount would be appropriate or how the trial court erred. Instead, they contend that since this case will have to be remanded for one reason or another in light of the earlier issues, this Court should instruct the trial court on remand to revisit the issue of attorney fees and costs.

We decline plaintiffs' open-ended request to remand, and we treat their failure to brief the issue properly as an implicit abandonment. *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959). Moreover, it does not appear that the amount awarded is unfair under the circumstances. A review of the exhibits attached to plaintiffs' brief requesting fees demonstrates that at least half of the fees and costs requested were generated after most of the disputed items were turned over. The trial court would not have erred in refusing to award fees and costs generated in connection with issues found to be without merit.

Affirmed in part and reversed in part.