FARWELL v NEAL

1. TRIAL—LEGAL ISSUES—EQUITABLE ISSUES—JURY TRIAL.

Only the procedural distinctions between law and equity have been abolished by the General Court Rules; the substantive distinctions continue to be important when determining the right to jury trial.

2. RELEASE—FRAUD—EQUITABLE ISSUE—JURY TRIAL.

The validity of a release, attacked on the ground of fraud in the inducement, is an equitable question; no right to a jury trial attaches to such an issue.

3. TRIAL—LEGAL ISSUES—EQUITABLE ISSUES—JURY TRIAL.

The right to a jury trial of the legal issues in a case is not denied where the judge first decides an equitable issue, on which there is no right to a trial by jury.

4. RELEASE—VALIDITY.

A release to be valid must be fairly and knowingly made.

5. RELEASE—VALIDITY—UNFAIRNESS.

Unfairness in securing a release involves pressing the releasor into signing while he is dazed or suffering from shock, or misrepresenting facts to induce him to sign.

6. RELEASE—VALIDITY—KNOWN INJURY—UNEXPECTED CONSEQUENCES.

A release is binding as to all injuries known at the time of the execution including unexpected adverse consequences of a known but apparently negligible injury.

7. RELEASE—VALIDITY—KNOWN INJURY—UNEXPECTED CONSEQUENCES.

A release was valid even though the releasor's back pains allegedly became more severe and possibly permanent after the release was signed, where the releasor knew of the back pains when he signed the release.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 53 Am Jur, Trial § 53.
[2] 45 Am Jur, Release § 50 *et seq.*
[4, 5] 45 Am Jur, Release § 17 *et seq.*
[6, 7] 45 Am Jur, Release §§ 30, 31.

Appeal from Muskegon, James F. Schoener, J. Submitted Division 3 April 11, 1972, at Grand Rapids. (Docket No. 11958.) Decided April 28, 1972.

Complaint by Robert J. Farwell and Nelda Jo Farwell against Eugene W. Neal for personal injuries. Accelerated judgment for defendant. Plaintiffs appeal. Affirmed.

*Bergstrom, Slykhouse & Shaw* (by *H. David Soet),* for plaintiffs.

*Landman, Hathaway, Latimer, Clink & Robb* (by *Charles H. Rawlings),* for defendant.

Before: J. H. Gillis, P. J., and R. B. Burns and Danhof, JJ.

R. B. Burns, J. Plaintiffs filed suit to recover damages resulting from an accident in which their vehicle collided with a truck driven by defendant. Defendant disclaimed liability and filed a motion for accelerated judgment based upon a release signed by plaintiffs.[1] Asserting that the release was obtained by fraudulent misrepresentations, the plaintiffs timely demanded a jury trial as to the validity of the release. The trial judge denied plaintiffs' request for a jury trial and proceeded, in chancery, to validate the release.

Plaintiffs appeal claiming they were denied the right to a jury trial preserved in Michigan by court rule[2] as well as by constitution.[3]

Resolution of this issue is controlled by *Style v Greenslade,* 364 Mich 679 (1961) where, as in this

[1] GCR 1963, 116.1(5) authorizes such a procedure.

[2] GCR 1963, 508.1.

[3] Const 1963, art 1, § 14.

case, the validity of a release was questioned on the basis of fraudulent procurement.

The *Style* Court reaffirmed the principle that purely equitable matters should be decided by the trial judge:

"If the release is upheld in the chancery proceeding, that should end the matter. If the release is held invalid, plaintiff may then proceed with her law action involving questions of negligence and damages." *Style v Greenslade, supra,* p 683.

Plaintiffs urge us to avoid application of *Style* in light of Justice BLACK's dictum in *Romero v King,* 368 Mich 45, 55 (1962):

"Since *Style* is discussed in the briefs, it may be well to point out that that case is inevitably due for scrutinous re-examination in the light of recent reaffirmation *(Dairy Queen v Wood,* 369 US 469; 82 S Ct 894; 8 L Ed 2d 44 [1962]) of that which was upheld in *Beacon Theatres, Inc. v Westover,* 359 US 500; 79 S Ct 948; 3 L Ed 2d 988 [1959]. Considering this Court's sweeping adoption of the Federal Rules * * * , and looking again at Michigan's own constitutionally guaranteed right of trial by jury, it is not too likely that *Style's* reference to equity—of *Style's* issue of fact—will be repeated in the face of a timely demand for jury trial."

The *Style* decision, however, has yet to become the subject of "scrutinous re-examination" by our Supreme Court; and in *Abner A Wolf, Inc v Walch,* 385 Mich 253, 265–266 (1971), Justice BLACK emphasized the use of Michigan authority as distinguished from Federal to determine the extent of jury trial rights in Michigan courts:

"In Michigan, unlike the Federal practice with its involvement of specific acts of Congress and the Seventh Amendment, we determine properly under our Constitution the extent of equity's jurisdiction, duties

and powers. Our practice is governed by the rule set forth in *Vaughan v Wayne Circuit Judge,* 153 Mich 478, 480 (1908), followed in *F M Sibley Lumber Co v Wayne Circuit Judge,* 243 Mich 483, 485 (1928). It calls up the application of sound judicial discretion with no constitutional right of sequence of trial or jury trial involved; whenever the jurisdiction of equity is unquestioned, as here in *Wolf."*

Deferring the law case until disposal of the chancery-type issue was "unquestionably right" in the *F M Sibley* and *Vaughan Cases, supra,* and was reaffirmed by Justice BLACK'S opinion in the *Wolf Case.*

As Mr. Justice BLACK very lucidly pointed out in *Wolf,* only the procedural distinctions between law and equity have been abolished by our court rules;[4] the substantive distinctions continue to be important when determining the right to jury trial.

Vitiating an otherwise valid release on the basis of fraud in the inducement has historically been a chancery proceeding[5] and thus no right to jury trial attaches to such an issue.[6]

The equitable matter in the case is separate from the legal issue, thus to deny jury trial as to the equitable issue would not deny a jury trial on the merits of the legal issue.[7]

---

[4] *Abner A Wolf, Inc. v Walch, supra,* 258–263. See GCR 1963, 12 for the court rule merger law and equity.

[5] *Style v Greenslade,* 364 Mich 679 (1961).

[6] We think the authors' comments in 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 414 are particularly appropriate:

"The problem was and will remain essentially a historical inquiry—that is, whether the issue was the type which historically had been tried by the law courts or by the chancellor, as of the time when the constitutional guarantee to the right of trial by jury was adopted."

[7] In *Van Avery v Seiter,* 383 Mich 486, 490 (1970) [footnote 1] Justice BLACK clarified the chancellor's role in such cases. See, also, Justice BLACK'S observation in *Peasley v Lapeer Circuit Judge,* 373 Mich 222, 232 (1964).

Resolving the equitable issue prior to the legal one is simply good judicial administration.

As to the trial court's decision in chancery upholding the release's validity our review is *de novo;* however considerable weight is given to its factual findings. *Biske v City of Troy,* 381 Mich 611 (1969); *Gilmer v Anderson,* 34 Mich App 6 (1971).

It is undisputed that a release to be valid must be "fairly and knowingly" made. *Denton v Utley,* 350 Mich 332, 342 (1957); *Hall v Strom Construction Co,* 368 Mich 253 (1962); *Ware v Geismar,* 8 Mich App 627 (1967).

Unfairness has been characterized as pressing the releasor into signing at a time when he is still dazed or suffering from shock or misrepresenting facts to induce execution of the release. *Denton v Utley, supra.*

None of these circumstances are involved in this case. The release clearly discharges the defendant and his insurance company from all claims and purports to be a final agreement between the parties. The plaintiffs readily admit they read the release prior to signing. No misrepresentations were made by the insurance adjuster and pressure, if any, was exerted by plaintiffs on the adjuster. The plaintiffs had not seen the adjuster for some time prior to execution of the release so they called him and told him they wished to discuss the claim. The release was finally executed approximately three weeks after the accident.

Application of the second element of the rule, *i.e.,* "knowingly" made, in the *Denton, Hall* and *Ware* cases relates to the concept of mutual mistake:

"A releasor who believes he is without personal inju-

ries, or that he has certain minor injuries only, and who, secure in his belief, executes a general release, will not be bound by it if other and more serious injuries are discovered later." *Denton v Utley, supra,* pp 343–344.

If, however, the releasor has knowledge that he "may have serious injuries" and still signs the release it is valid.

"In other words, it is possible that a reasonable, intelligent person, in full possession of all his faculties, and with knowledge that he may have serious injuries, will release a tort-feasor from all liability in return for a trifling sum of money." *Denton v Utley, supra,* pp 344–345.

In *Hall v Strom Construction Co, supra,* p 258, the Court made clear that "unexpected adverse consequences of a known yet apparently negligible injury" does not constitute mutual mistake. Lack of mutual mistake in the present controversy is foreclosed by the *Hall* ruling.

Approximately three weeks transpired prior to execution of the release. During this three week period Mr. Farwell was told by the insurance adjuster to visit a chiropractor because Mr. Farwell was complaining of neck and back pains. After signing the release the back pains allegedly became more severe and possibly permanent in nature. No unknown injury was subsequently discovered. Mr. Farwell had knowledge of his back injury when he released all his claims in consideration for $424 plus actual medical expenses up to $2,000. Mrs. Farwell claims she has suffered from headaches since signing the release, but the testimony makes clear that Mrs. Farwell was suffering from continual headaches long before she signed the release.

Judgment affirmed. Costs to defendant.

All concurred.