ANZALDUA v BAND

SUROWY v WAYNE STATE UNIVERSITY

Docket Nos. 168358, 170339. Submitted November 21, 1995, at Lansing. Decided May 14, 1996, at 9:10 A.M. Leave to appeal sought.

Sharon E. Anzaldua brought an action in the Ingham Circuit Court against Rudolph N. Band and Michigan State University, seeking damages under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.* The court, Carolyn Stell, J., granted the defendants' motion to strike the plaintiff's jury demand. The plaintiff appealed by leave granted.

John E. Surowy brought an action in the Wayne Circuit Court against Wayne State University, seeking damages under the WPA. The court, James Mies, J., denied the defendant's motion to strike the plaintiff's jury demand. The defendant appealed by leave granted.

The appeals were consolidated.

The Court of Appeals *held*:

1. Const 1963, art 1, § 14 provides that the right to a trial by jury "shall remain." Although there is some authority that suggests that the constitutional right to a trial by jury exists with respect to new statutory causes of action only where there existed a similar common-law cause of action that predated the adoption of the 1963 constitution, there is little persuasive rationale for that position, and the weight of authority supports the conclusion that the constitutional right to a jury trial exists with respect to all actions that had they existed before the adoption of the 1963 constitution, would have been denominated as actions at law. Because actions under the WPA generally are denominated as legal actions entitled to a jury trial, the constitutional right to a jury trial exists with respect to actions for damages brought under the WPA.

2. The defendant universities are state entities that enjoy the state's sovereign immunity, which, in the absence of a waiver of that immunity by the Legislature, would be liable for damages only in an action brought in the Court of Claims, in which there is no right to a jury trial. Sovereign immunity may be waived either by express statutory enactment or by necessary inference from a statute. Because the Legislature included state entities within the definition of employer in the WPA and provided that WPA actions may be

filed in the circuit court, the Legislature, by necessary inference, waived the right of state entities to be sued with respect to WPA claims only in the Court of Claims. Accordingly, in light of the Legislature's clear intent that both public and private defendants in WPA actions be treated in the same manner, the fact that the defendant universities are state entities does not preclude the plaintiffs from demanding that their claims for damages under the WPA be tried before a jury.

Order of the Ingham Circuit Court reversed; order of the Wayne Circuit Court affirmed.

O'CONNELL, J., concurring in part and dissenting in part, stated that because the plaintiffs seek legal relief under the WPA, they would normally be entitled to a jury trial. However, because the defendant universities are state entities subject to the state's right to sovereign immunity, the right to a trial by jury exists only if immunity has been waived, either explicitly or by necessary inference. The Legislature has not explicitly directed that a WPA claim for damages against a state entity shall include the right to demand a jury trial, and a jury trial may not necessarily be inferred from the subjecting of state entities to WPA liability or from the direction that WPA claims may be filed in the circuit court.

1. TRIAL — TRIAL BY JURY — WHISTLEBLOWERS' PROTECTION ACT.

Actions for damages brought under the Whistleblowers' Protection Act are subject to the constitutional right of a trial by jury (Const 1963, art 1, § 14; MCL 15.361 *et seq.*; MSA 17.428[1] *et seq.*).

2. TRIAL — TRIAL BY JURY — STATE ENTITIES — WHISTLEBLOWERS' PROTECTION ACT.

A plaintiff bringing an action for damages under the Whistleblowers' Protection Act against a state entity may demand that the claim be tried by a jury; the Legislature, by necessary inference, waived the state's right to have claims for damages under the WPA tried in a bench trial in the Court of Claims (MCL 15.361 *et seq.*; MSA 17.428[1] *et seq.*).

*Thomas J. Jewett* and *Green and Green* (by *Philip Green* and *Christine A. Green*), for Sharon E. Anzaldua.

*Dib and Fagan, P.C.* (by *Barry S. Fagan* and *Robert A. Dubin*), for John E. Surowy.

*Fraser Trebilcock Davis & Foster, P.C.* (by *Michael E. Cavanaugh* and *Mark R. Fox*), for Rudolph N. Band.

*Michael J. Kiley*, for Michigan State University.

*Daniel J. Bernard*, for Wayne State University.

Before: MARKMAN, P.J., and O'CONNELL and J. D. PAYANT,* JJ.

MARKMAN, P.J. In Docket No. 168358, plaintiff Anzaldua appeals by leave granted a trial court order striking her jury demand. In Docket No. 170339, defendant Wayne State University appeals by leave granted a trial court order denying its motion to strike plaintiff Surowy's jury demand. These cases, consolidated for appeal, are actions for relief under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.* They present the issue whether the right to a jury trial is retained in actions under the WPA. We conclude that it is. We further conclude that the fact that the defendant universities are state institutions does not change this result. We therefore reverse in Docket No. 168358 and affirm in Docket No. 170339.

The WPA is silent regarding whether parties bringing actions under its provisions are to be afforded a right to a jury trial.[1] In both cases here, the trial courts appropriately framed the issue as whether parties bringing actions under the WPA retained the right to a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCL 15.364; MSA 17.428(4) discusses appropriate remedies that "[a] court, in rendering a judgment" may award. However, this provision does not indicate whether the court judgment is to follow a jury trial or a bench trial

jury trial under the Michigan Constitution. Const 1963, art 1, § 14 states in pertinent part:

> The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law.

The "shall remain" language indicates that this provision retains the right to a jury trial as it existed at the time the constitution was adopted and neither restricts nor enlarges it. Accordingly, the question before us in interpreting this provision is what the "right of trial by jury" was in 1963.[2] We must define the parameters of the constitutional right to a jury trial to determine whether this right is retained in actions under the WPA.

Here, the trial courts came to opposite conclusions regarding whether the right to a jury trial is retained in actions under the WPA because each used a different test to analyze the constitutional right to a jury trial. In Docket No. 168358, the trial court stated, "there is no right to a jury trial under the [WPA] because that Act was not a common law cause of action prior to the adoption of the 1963 Constitution." In Docket No. 170339, the trial court compared the case before it to *King v General Motors Corp*, 136 Mich App 301; 356 NW2d 626 (1984), which held that the right to a jury trial is preserved in actions under the Civil Rights Act. It stated that "an employment discrimination action constitutes a suit for damages and is therefore an action at law which existed prior

---

[2] Const 1963, art 1, § 14 is a continuation of Const 1908, art 2, § 13, Const 1850, art 6, § 27, and Const 1835, art 1, § 9, derived in turn from the Northwest Ordinance of 1787, Art II.

to the adoption of the Michigan Constitution" and concluded that "I think that is the issue."

These two approaches differ regarding the conditions under which the constitutional right to a jury trial is retained when the Legislature creates a new cause of action without indicating whether the action is to be tried by a jury or the bench. We will refer to these two approaches as the historical-analogue approach and the nature-of-action approach throughout this opinion.[3] Under the historical-analogue approach, the test is whether a similar cause of action in which a jury trial was accorded existed at the time the 1963 constitution was adopted. Under the nature-of-action approach, the test is whether the cause of action would have been denominated as legal at the time that the 1963 constitution was adopted and, therefore, whether a party bringing the action would have been accorded a right to a jury trial.

Our nomenclature for the two approaches is intended to distinguish them. However, the distinction between them is more subtle than this nomenclature indicates. Both approaches have an historical-analogue element. Because Const 1963, art 1, § 14 states that the right to a trial by jury shall "remain" as it was at the time the state constitution was adopted, the focus under each approach is whether a party

---

[3] We note that none of the cases we found discussing the constitutional right to a jury trial acknowledge the existence of two distinct approaches to determining when this right is retained. The two approaches may not have developed as separate schools but may be the result of misinterpretation or misapplication of a single approach. In any event, a reasonable interpreter of the relevant case law could find two distinct approaches to determining when the right to a jury trial is retained, as demonstrated by the divergent results reached by the trial courts in the present cases.

bringing a similar cause of action would have been afforded a right to a jury trial at that time. With respect to this historical-analogue element, the distinction between the two approaches is how broadly the concept of a similar cause of action is read. The historical-analogue approach requires the existence before the adoption of the 1963 constitution of a common-law action protecting similar legal interests in which a right to a jury trial was afforded. The nature-of-action approach requires only that the cause of action at issue be legal as opposed to equitable, because the common law at the time of the adoption of the 1963 constitution recognized a right to a jury trial in actions denominated as legal.

Both approaches also consider the nature of the action—whether it is legal or equitable. The denomination of an action as legal or equitable determines whether there is a right to a jury trial under the nature-of-action approach. The historical-analogue approach also analyzes whether an action is legal or equitable to decide if a right to a jury trial is retained. Under this approach, if an analogue predating the 1963 constitution exits, it must still be determined whether the analogue incorporated the right to a jury trial. The cases supporting the historical-analogue approach require the existence of an analogue at common law that afforded the right to a jury trial at the time the 1963 constitution was adopted. "Common law" is generally read as the opposite of "statutory." But "common law" is also an antonym to "equitable." Black's Law Dictionary (5th ed), at 251. The Seventh Amendment, US Const, Am VII, provides the federal constitutional right to a jury trial "[i]n suits at common law." In *Granfinanciera, SA v Nordberg*, 493

US 33, 41; 109 S Ct 2782; 106 L Ed 2d 26 (1989), the
United States Supreme Court held:

> We have consistently interpreted the phrase "Suits at
> common law" to refer to "suits in which *legal* rights were to
> be ascertained and determined, in contradistinction to
> those where equitable rights alone were recognized and
> equitable remedies were administered." *Parsons v Bedford*,
> 28 US (3 Pet) 433, 447; 7 L Ed 732 (1830).

Accordingly, in the cases supporting the historical-
analogue approach, the term "common law" is appro-
priately read as a contrast to equity. The requirement
of these cases of a common-law analogue is therefore
a requirement of a legal analogue. Further, several of
the cases supporting the historical-analogue approach
explicitly discuss the legal or equitable nature of the
case before them. For example, in *In re Colon*, 144
Mich App 805, 818; 377 NW2d 321 (1985), this Court
set forth this underlying principle:

> In general, before the Constitution was adopted, there
> was a right to jury trial at law but not in equity.

Thus, under the historical-analogue approach, the
denomination of an action as legal or equitable deter-
mines whether there is a right to a jury trial only if
there existed before the adoption of the 1963 consti-
tution a common-law cause of action. Accordingly,
while both approaches ultimately look to the nature
of the action, they differ in that the historical-
analogue approach has the additional requirement
that a similar common-law cause of action existed
before the adoption of the 1963 constitution.

The language of the constitutional provision does
not indicate which of these two approaches is cor-

rect. There is Michigan case law supporting both approaches. Accordingly, the case law offers no definitive guidance regarding which approach correctly construes the constitutional provision. Even individual cases are often ambiguous regarding which approach controlled the determination whether the right to a jury trial had been retained.

We found cases that arguably support the historical-analogue approach. *Conservation Dep't v Brown*, 335 Mich 343; 55 NW2d 859 (1952), involved the confiscation of an illegal fishing net. The Court noted that the statute at issue was silent regarding whether there was a right to a jury trial and held:

> [T]he right to trial by jury is preserved in all cases where it existed prior to the adoption of the Constitution. The constitutional guaranty applies to cases arising under statutes enacted subsequent to adoption of the Constitution, which are similar in character to cases in which the right to jury trial existed before the Constitution was adopted. . . .
>
> The precise question presented, then, is whether the proceedings here are of such character that a jury trial would have been available before adoption of the Constitution. [*Id.* at 346-347 (citations omitted).]

The *Brown* Court noted that the proceedings at issue were not equitable in nature. *Id.* at 347. But we note that an action involving the confiscation of personal property is not an ordinary legal action. The *Brown* Court concluded:

> We are not persuaded that this is a cause of action known to the common law in which a jury trial was accorded prior to adoption of the Constitution of this state. [*Id.* at 350.]

Several other cases that arguably support the historical-analogue approach determined that no right to a jury trial was retained. In *Chamberlin v Detroit Edison Co*, 14 Mich App 565; 165 NW2d 845 (1968), this Court affirmed the dismissal of the property owners' complaint contesting nonjury utility condemnation proceedings. In *Meyer v Dep't of Treasury*, 129 Mich App 335; 341 NW2d 516 (1983), this Court affirmed the denial of a jury trial request in Tax Tribunal proceedings. In *Tomlin v Dep't of Social Services*, 154 Mich App 675; 398 NW2d 490 (1986), an action regarding alleged overpayments of medicaid benefits, this Court found no right to a jury trial.

In *In re Colon, supra*, this Court held that there was no right to a jury trial in child custody matters. The *Colon* Court held:

> [R]espondent's entitlement to a jury trial depends on whether this case is "similar in character" to cases affording a jury trial before the Constitution was adopted. In addition, we must look to whether the instant proceeding involves a cause of action "known to the common law." [*Id.* at 818.]

We note that the *Colon* Court's use of the term "in addition" indicates that this approach has two distinct elements: (1) that the cause of action at issue be "similar in character" to actions predating the 1963 constitution that afforded a jury trial and (2) that the cause of action at issue be "known to the common law." The *Colon* Court concluded that child custody matters are clearly equitable in nature and rejected the respondent's argument that he was entitled to a jury trial. *Id.* at 819.

The basis for the result in each of these five cases in which no right to a jury trial was found is unclear.

None of them were traditional legal actions that sought legal remedies. Therefore, application of the nature-of-action approach to these actions would have also resulted in determinations that no right to a jury trial was retained. A case, legal in nature, in which no right to a jury trial was found *solely* on the basis of the lack of an historical analogue would have directly addressed the situation in which application of the two approaches would yield different results. However, we found no such case.

Several cases in which the right to a jury trial was found to be retained under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and the Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, also arguably support the historical-analogue approach. In *King v General Motors Corp*, *supra* at 308-309, this Court held that the right to a jury trial is retained in an employment discrimination action under the CRA:

> An employment discrimination action constitutes a suit for damages and is therefore an action at law which existed prior to the adoption of the Michigan Constitution in 1963. *Ferguson v Gies*, 82 Mich 358, 365; 46 NW 718 (1890); *St John v General Motors Corp*, 308 Mich 333, 336; 13 NW2d 840 (1944); *Pompey v General Motors Corp*, 385 Mich 537, 556-557; 189 NW2d 243 (1971).

We note that the basis of the *King* Court's conclusion that the right to a jury trial was retained is ambiguous. It is unclear whether its conclusion turned on the fact that the suit was a legal action or on the fact that there existed common-law analogues predating the 1963 constitution that afforded a right to a jury trial.

In *Smith v Univ of Detroit*, 145 Mich App 468, 477; 378 NW2d 511 (1985), a race discrimination action under the CRA by students, this Court reversed a denial of a jury trial request because "common-law actions for damages for similar discriminatory acts were recognized prior to the adoption of the 1963 constitution." In *Barbour v Dep't of Social Services*, 172 Mich App 275, 280-281; 431 NW2d 482 (1988), this Court affirmed the denial of the defendant's motion to strike a jury demand in an employment discrimination action under the HCRA on the basis that "employment discrimination claims are actions at law which existed prior to the adoption of the state constitution."

These cases that support the historical-analogue approach fail to provide clear authority for choosing the historical-analogue approach over the nature-of-action approach. The language of these cases is ambiguous. The requirement of an historical analogue is drawn from language stating that the constitutional guaranty applies to actions "similar in character" to cases having the right to a jury trial at the time Michigan's constitution was adopted. As noted above, such language can be read to require the existence of an analogue predating the 1963 constitution or to refer to the nature of the action; i.e., to require that the cause of action at issue be legal in nature because legal actions retained the right to a jury trial at the time the constitution was adopted.

We acknowledge that the opinion in *In re Colon*, *supra*, explicitly refers to two separate elements: "similar in character" and "known to the common law." The language of *Colon* thus provides the least ambiguous evidence that "similar in character" should

be read to require an historical analogue rather than to require that action be legal in nature. But the *Colon* Court ultimately focused on the equitable nature of child custody matters rather than the absence of an historical analogue in holding that there was no right to a jury trial. *Colon* at 818-819.

In contrast to the cases supporting the historical-analogue approach, we found cases supporting the nature-of-action approach that unambiguously identify the factors on which their determinations regarding the right to a jury trial turn. These cases focus exclusively on the nature of the action to determine whether there is a right to a jury trial. In *Kahoun v Metropolitan Life Ins Co*, 12 Mich App 441, 445; 162 NW2d 922 (1968), this Court held that an insured was improperly denied a jury trial in an action for reimbursement expenses because "[t]he right to jury trial should not be abridged in actions brought at law."

In *Abner A Wolf, Inc v Walch*, 385 Mich 253; 188 NW2d 544 (1971), an action to foreclose a mortgage, the defendants demanded a jury trial in connection with their counterclaim that raised legal issues. The entire case was tried before a jury and the trial judge made no independent factual findings regarding the equitable issues. The *Wolf* Court remanded for reargument before the trial judge. It cited with approval 1 Honigman & Hawkins, Michigan Court Rules Annotated, p 11:

> Most important, the distinctions between law and equity must continue to be recognized for the purpose of preserving constitutional rights to trial by jury in legal matters and trial by court in equity matters. [*Wolf* at 261.]

In *Hackett v Connor*, 58 Mich App 202, 207; 227 NW2d 292 (1975), this Court reversed the denial of a jury trial request in an action for breach of an oral contract, holding:

> To determine the merits of this claim, we must ascertain whether the issues raised by plaintiffs' complaint were "historically . . . tried by the law courts or by the chancellor as of the time when the constitutional guarantee to the right of trial by jury was adopted." 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 414.

In *Dutka v Sinai Hosp of Detroit,* 143 Mich App 170; 371 NW2d 901 (1985), this Court held that the trial court erred in striking a jury demand in an action for breach of an implied contract. The *Dutka* Court focused on the nature of the relief sought, stating:

> If a plaintiff seeks only equitable relief, he has no right to a trial by jury. However, in this case, the plaintiff sought both equitable relief in the form of specific performance and legal relief in the form of damages. In this situation the plaintiff had a right to have a jury hear his damage claim. [*Id..* at 173 (citations omitted).]

In several cases, no right to a jury trial was found because of the equitable nature of the action. In *Farwell v Neal*, 40 Mich App 351, 354; 198 NW2d 801 (1972), this Court affirmed a denial of a jury trial request in an action involving an alleged release with respect to an automobile accident because the validity of a release was an equitable issue to which no right to a jury trial attached. In *Wolfenden v Burke*, 69 Mich App 394, 399; 245 NW2d 61 (1976), a real property action, this Court affirmed a ruling that the action was equitable and, therefore, to be tried by the court. In *Thomas v Steuernol*, 185 Mich App 148, 155-

156; 460 NW2d 577 (1990), an attempt to reopen an estate, this Court affirmed the circuit court dismissal of the plaintiff's claim for a jury trial because he had alleged only equitable causes of action. Finally, in *In re Forfeiture of $1,159,420*, 194 Mich App 134, 154-155; 486 NW2d 326 (1992), this Court found no constitutional right to a jury trial in forfeiture matters because they are equitable.

These cases supporting the nature-of-action approach are not ambiguous in the ways that those supporting the historical-analogue approach are. These cases focus exclusively on the nature of the action to determine whether there is a right to a jury trial. They do not mention the concept of an historical analogue. Accordingly, neither the language nor the results in these cases are ambiguous concerning the factors on which the right to a jury trial turn.

To decide whether the constitutional right to a jury trial is retained in the present actions under the WPA, we must choose between the historical-analogue and nature-of-action approaches. Here, we believe that our decision is dependent on which of these approaches we choose. Under the historical-analogue approach, we would conclude that no right to a jury trial is retained under the WPA because we believe that no true common-law analogue of the WPA predated the 1963 constitution. In *Dudewicz v Norris Schmid, Inc*, 443 Mich 68; 503 NW2d 645 (1993), the plaintiff alleged that he was discharged in violation of the WPA and in contravention of public policy. In the course of its determination that the WPA provided an exclusive remedy, the Court held:

> At common law, there was no right to be free from being fired for reporting an employer's violation of the law. [*Id.* at 78.]

See also *Shuttleworth v Riverside Osteopathic Hosp*, 191 Mich App 25, 27; 477 NW2d 453 (1991). Here, plaintiffs argue that cases acknowledging that an employer may not discharge an at-will employee for reasons that contravene public policy are an historical analogue to a cause of action under the WPA. We do not believe such cases are sufficiently similar to actions under the WPA to constitute an historical analogue. Further, we found no such Michigan authority that predated the 1963 constitution. See, for example, *Sventko v Kroger Co*, 69 Mich App 644, 647; 245 NW2d 151 (1976).

Under the nature-of-action approach, however, we believe that a right to a jury trial would be retained here under the WPA. The WPA provides that a person may bring an action under it "for appropriate injunctive relief, or actual damages, or both." Section 3(1) of the WPA, MCL 15.363(1); MSA 17.428(3)(1). In *Hopkins v Midland*, 158 Mich App 361, 374; 404 NW2d 744 (1987), and *Tyrna v Adamo, Inc*, 159 Mich App 592, 600; 407 NW2d 47 (1987), this Court held:

> [The WPA] provides a full panoply of legal and injunctive remedies including reinstatement, payment of back wages, full reinstatement of fringe benefits and seniority rights, and actual damages, as well as costs including reasonable attorney and witness fees. MCL 15.364; MSA 17.428(4).

Thus, the WPA is recognized to provide for legal relief.[4] We also note that defendants do not dispute that plaintiffs' claims are legal in nature.

Accordingly, we must decide between the two approaches to resolve the issue before us. Mindful that our ultimate task is to interpret this constitutional provision, we conclude that the better test of whether the constitutional right to a jury trial is retained is the nature-of-action approach.

First, our review of relevant cases convinces us that they largely turn on the nature of the action. As discussed above, both the results and the language of the cases supporting the historical analogue are ambiguous regarding the factors on which the right to a jury trial turn. We found no published cases in which a litigant pursuing a legal action and seeking legal relief was found *not* to have a right to a jury trial. Even among the cases supporting the historical-analogue approach, none of the five cases that held the right to a jury trial was not retained involved traditional legal actions. These courts did not have to squarely assess the validity of the historical-analogue approach, because the actions before them were not legal actions in which the right to a jury trial might have been retained but for the lack of a historical analogue. Accordingly, these cases' support for the historical-analogue approach is less compelling than

---

[4] We note that plaintiffs here seek money damages for the alleged violations of the WPA. Actions seeking money damages are generally denominated as legal actions entitled to a jury trial. See *B & D Die Co v Ford Motor Co*, 167 Mich App 176, 184; 421 NW2d 620 (1988). However, we recognize that the mere fact that damages are sought is not determinative of the legal or equitable nature of the action, because damages may be recovered in purely equitable proceedings. *Grigg v Hanna*, 283 Mich 443; 278 NW 125 (1938); *Latimer v Piper*, 261 Mich 123; 246 NW 65 (1933).

if the courts had found no right to a jury trial on the basis of the lack of a historical analogue in a legal action.

The results in all the cases we discussed may be accounted for by the nature-of-action approach. In contrast, the cases supporting the nature-of-action approach do not discuss historical analogues; thus, the results in those cases may not be reasonably read to turn on whether an historical analogue existed. Further, that a particular action was unknown to the common law does not appear determinative of whether a right to a jury trial exists. Some statutory actions unknown to the common law and, indeed, in derogation of the common law are nonetheless triable by jury, e.g., wrongful death cases, MCL 600.2922; MSA 27A.2922, because the *nature* of the suit is one for damages for personal injuries, which type of action was triable by jury at common law. See *Leary v Fisher*, 248 Mich 574; 227 NW 767 (1929). For these reasons, the nature-of-action approach better explains the relevant case law than does the historical-analogue approach.

Second, commentary on the court rule addressing the constitutional right to a jury trial better supports the nature-of-action approach. MCR 2.508(A) states:

> The right of trial by jury as declared by the constitution must be preserved to the parties inviolate.

The authors' comment on this rule in 3 Martin, Dean & Webster, Michigan Court Rules Practice, pp 138-139, states:

> [B]oth the constitution and the court rule speak of "retaining" and "preserving" the right to trial by jury, not creating one. The right preserved is that as it existed under

common law. Thus to determine whether or not a particular issue or action is entitled to trial by jury, a historical inquiry must be made to determine whether the issue was one which was tried by the law courts or by the chancellor in equity, as of the time when the constitutional guarantee to the right to trial by jury was first adopted. . . .

\*     \*     \*

. . . If all of the issues combined in a single proceeding are of the same nature, all legal or all equitable, one must only identify the true character of the issues to determine if a right to trial by jury exists. Once the character of the issues is determined, a historical inquiry will reveal whether the issues were tried by the law courts or by the chancellor. Only those issues historically tried before the law courts retain the right to trial by jury.

This comment focuses on identifying the nature of the issues—i.e. whether they are legal or equitable--to determine if the right to a jury trial is retained. It speaks of determining whether the issues were ones tried by "the law courts" or "by the chancellor in equity." This comment accordingly appears to support the nature-of-action approach.

Third, we note the interpretation of jury trial provisions of the United States Constitution and the constitutions of other states that similarly provide that the right to a jury trial shall "remain" or "be preserved." In *Granfinanciera, SA v Nordberg, supra* at 41-42, the United Sates Supreme Court held:

Although "the thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791," the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.

The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." The second stage of this analysis is more important than the first. [Citations omitted.]

The *Granfinanciera* Court also stated:

In *Parsons v Bedford*, [28 US (3 Pet) 433; 7 L Ed 732 (1830)] (emphasis added), we contrasted suits at law with "those where equitable rights *alone* were recognized" in holding that the Seventh Amendment right to a jury trial applies to all but the latter actions. [*Id.* at 43-44.]

State constitutions "generally" contain express guaranties of the right to a jury trial; such provisions guarantee "the right to a jury trial in those cases in which such a right existed at common law or by statute at the time of the adoption of the state constitution." 47 Am Jur 2d, Jury, § 6, p 717. Anno: *Right to jury trial in action under state civil rights law*, 12 ALR5th 508, 520 states:

The general rule under both the Seventh Amendment and the state constitutional provisions is that the right to jury trial protected thereby has substantially the same meaning, extent, and application that it had at common law and at the time of the adoption of those provisions, although the right applies not only to those causes of action that existed at common law or at the time the constitutional provisions were adopted, but also to substantially similar causes of action which would have been subject to the jury trial right if they had been known at that time.

The ALR annotation does not mention any minority rule among the jury trial provisions in state constitutions. Specifically, it does not mention any require-

ment of an inquiry whether there was a preconstitu-
tional analogue to the action at issue. Rather, the rele-
vant question under the general rule set forth in the
annotation is whether there would have been a right
to a jury trial if the cause of action at issue had been
recognized before adoption of the constitution. Thus,
this interpretation of similar jury trial provisions in
the United States Constitution and other state consti-
tutions appears to support the nature-of-action
approach rather than the historical-analogue
approach.

Fourth, we believe that the Legislature that drafted
the WPA in 1980 would have reasonably expected that
the right to a jury trial would be retained in an action
under the WPA seeking legal remedies. The WPA bears
substantial similarities to Michigan civil rights stat-
utes under which the right to a jury trial is retained.
Actions under the WPA are analyzed using the "shifting
burdens" framework utilized in retaliatory discharge
actions under the CRA. See *Hopkins v Midland, supra*
at 378. We also note that the WPA is similar to Michi-
gan's civil rights statutes in that all three acts may be
broadly characterized as civil rights acts, all three
appear directed at protecting employees from wrong-
ful treatment by employers, and actions brought
under each of the three acts involve similar factual
questions of employer motivation. As discussed
above, this Court has determined that the constitu-
tional right to a jury trial is retained in actions under
the CRA and the HCRA. See *King, supra; Smith, supra;
Barbour, supra.*[5] In the context of the similarity of

---

[5] While these cases were decided after the WPA was drafted, we believe
that they were correctly decided and that the 1980 Legislature would have

the WPA to these acts, we believe that the 1980 Legislature likely expected that the right to a jury trial would be retained under the WPA as it is under the CRA and the HCRA.

Other aspects of the present cases also suggest that the drafters of the WPA intended that the right to a jury trial would obtain under it. Both the historical-analogue approach and the nature-of-action approach recognize the underlying principle that the right to a jury trial is generally retained in legal actions but not in equitable actions. See *Colon, supra* at 818. In interpreting Const 1963, art 1, § 14, as with the Seventh Amendment, we are to take cognizance of the historical boundaries separating the provinces of judge and jury as reflected in our constitutional tradition. The WPA provides for legal remedies. *Hopkins, supra*; *Tyrna, supra*. The right to a jury trial is typically retained in actions seeking legal remedies.

The present actions also raise the type of issues ordinarily raised in legal actions and addressed by juries. Actions under the WPA primarily focus on factual issues such as whether the plaintiff "blew the whistle," whether the defendant was aware that plaintiff did so, and whether the decision to discharge the plaintiff resulted from the plaintiff's "whistle-blowing" or from some other cause. These are the types of ordinary factual questions that typify legal actions tried to juries as opposed to the extraordinary issues that typify equitable actions in which judges act as factfinders, e.g., suits for an accounting, *Second Michigan Cooperative Housing Ass'n v First Michigan*

---

reasonably expected the right to a jury trial to be retained in actions under the CRA and the HCRA.

*Cooperative Housing Ass'n,* 358 Mich 252, 256; 99
NW2d 665 (1959). These aspects of the present cases
also indicate that the drafters of the WPA would have
reasonably expected that the right to a jury trial
would be retained in actions under the WPA.

Fifth, we consider the two approaches from a con-
stitutional policy perspective. Const 1963, art 1, § 14
states that the "right of trial by jury shall remain." It
thereby retains intact the right to a jury trial as it
existed in 1963. The historical-analogue approach
addresses this aspect of the constitutional provision
by requiring the existence of a pre-1963 common-law
analogue for a right to a jury trial to be retained. The
nature-of-action approach addresses this aspect by
requiring that the nature of an action be legal for a
right to a jury trial to attach, because legal causes of
action generally were afforded a right to a jury trial at
the time the 1963 constitution was adopted.

We discern relatively little persuasive rationale for
the requirement of the historical-analogue approach
that a pre-1963 common-law analogue be found to
exist. The law develops as issues arise and are liti-
gated. The interpretation of Const 1963, art 1, § 14
required by the application of the historical-analogue
approach somewhat arbitrarily limits the right to a
jury trial to causes of action similar to those recog-
nized at the time of the adoption of the 1963 constitu-
tion. Despite high regard for the value of tradition, we
are unaware of any particular significance of 1963 to
the development of the common law that would jus-
tify using that year to circumscribe the causes of
action that retain a right to a jury trial. We do not
believe that the framers of the 1963 constitution
intended to limit the right to a jury trial on this basis.

In contrast, the interpretation of the constitutional provision required by the application of the nature-of-action approach, which focuses on whether an action is legal or equitable, preserves a more general and rationally conceived rule of law for determining whether the right to a jury trial is retained. We therefore believe that consideration of the nature of the action provides a more compelling rationale for determining the scope of this important constitutional right than a determination whether the common law had addressed an analogous issue by a particular date.

Finally, we note that we analyze the issue before us in the historical context of the constitutional right to a trial by jury. In The Federalist No. 83, Alexander Hamilton considered the "essentiality" to liberty of trial by jury in civil cases. One of the leading judicial scholars of the nineteenth century described the Seventh Amendment, the federal expression of the that right, as assuring the right to a jury trial to the "fullest latitudes of common law." Story, Commentaries on the Constitution (abridged ed), § 919, p 654. And in *McRae v Grand Rapids, L D R Co*, 93 Mich 399, 401; 53 NW 561 (1892), Michigan Supreme Court Justice Long stated:

> [T]he right of trial by a jury of 12 men became fixed centuries ago in the common law, and unanimity of verdict became requisite, until, wherever the Anglo-Saxon tongue was spoken, and in many other countries, this right came to be regarded as the great bulwark of the liberty of the citizen.

Faced with uncertain constitutional language and an irreconcilable split of authority interpreting the constitutional provision, the argument of constitutional tradition also persuades us to apply the approach that

extends this constitutional right to a greater rather than lesser range of civil actions.

For these reasons, we believe that the appropriate test for determining whether a right to a jury trial "remains" is to examine the nature of the action. Specifically, we hold that if the WPA had been in existence at the time of the adoption of the 1963 constitution, plaintiffs' actions here would properly have been denominated as legal actions, which retain the right to a jury trial.

We now address the effect, if any, on the right to a jury trial under the WPA of the fact that state actors are defendants here. The defendant universities are state institutions. Const 1963, art 8, § 5; *Fox v Bd of Regents of the Univ of Michigan*, 375 Mich 238, 241; 134 NW2d 146 (1965). Ordinarily, such state actors may be sued only in the Court of Claims. MCL 600.6419; MSA 27A.6419; *Fox, supra.* Cases in the Court of Claims are tried by the court, not by a jury. MCL 600.6443; MSA 27A.6443 and MCL 600.6421; MSA 27A.6421. However, the WPA, which defines "employer" to include state entities, § 1(b) of the WPA, MCL 15.361(b); MSA 17.428(1)(b), specifies that the actions thereunder may be filed in the circuit court. Section 3(2) of the WPA, MCL 15.363(2); MSA 17.428(3)(2). Thus, in the WPA, the Legislature waived the right of state entities to be sued only in the Court of Claims. The issue before us therefore is whether a state entity sued in the circuit court is subject to trial by jury.

This Court addressed a similar issue in *Barbour v Dep't of Social Services, supra* at 275, with respect to the CRA and the HCRA. Like the WPA, these acts include state actors as potential defendants and provide that

actions may be filed in the circuit court. See §§ 103
and 801 of the CRA, MCL 37.2103, 37.2801; MSA
3.548(103), 3.548(801) and §§ 103 and 606 of the HCRA,
MCL 37.1103, 37.1606; MSA 3.550(103), 3.550(606).
The *Barbour* Court noted that the CRA and the HCRA
"impose the same duties upon state agencies as upon
private employers" and direct that actions be filed in
the circuit court. *Id.* at 278. It stated:

> In most types of actions, the state cannot be tried in front
> of a jury because the Legislature requires those actions to
> be tried in the Court of Claims, where cases are heard with-
> out a jury. . . .
>     . . . Had the Legislature intended all civil rights claims
> against the state to be tried without a jury, it would seem
> that it would have conferred jurisdiction over such suits
> upon the Court of Claims, not the circuit court. [*Id.* at 280.]

The *Barbour* Court then considered the defendants'
contention that no right to a jury trial exists in suits
against the state. *Id.* It rejected that contention on the
basis that it would make the right to a jury trial turn
on "the character of a party, not the character of the
action." *Id.* at 281.

The state's sovereign immunity may be waived "by
an express statutory enactment or by necessary infer-
ence from a statute." *Benson v State Hosp Comm*, 316
Mich 66, 73; 25 NW2d 112 (1946), see also *McNair v
State Hwy Dep't*, 305 Mich 181, 187; 9 NW2d 52
(1943); *Mead v Michigan Public Service Comm*, 303
Mich 168, 173; 5 NW2d 740 (1942).[6] The WPA does not
expressly waive any immunity of state entities from a

---

[6] We are aware of United States Supreme Court precedent indicating
that the Seventh Amendment right to a jury trial does not apply in actions
against the federal government and that Congress must clearly and
unequivocally grant a right to a trial by jury against the federal govern-

trial by jury. The issue is whether such a waiver is a "necessary inference" from the language of the WPA.

We recognize the difficulty of precisely defining "necessary inference." When one deals with anything short of an express statement, there is always the possibility of alternative readings. An attempt to remedy this ambiguity by defining "necessary inference" as "the *only* conceivable inference" would make "necessary inference" indistinguishable from "express statutory enactment." But the *Mead* Court stated that the state may waive its sovereign immunity by "express statutory enactment" *or* by "necessary inference." Accordingly, we believe that a necessary inference is something less than an express statutory enactment and that a necessary inference requires something less than absolute certainty that it is the *only* conceivable inference. Whether an inference is a necessary inference sufficient to waive the state's immunity from a trial by jury or a mere possible inference insufficient for this purpose appears to be a matter of degree.

In construing a statute, we must give meaning to all the words used. *Southfield Western, Inc v Southfield*, 206 Mich App 334, 338; 520 NW2d 721 (1994). Accordingly, in interpreting the WPA, we must give meaning to § 3(2) of the WPA, which states that actions thereunder may be filed in the circuit court. The circuit

---

ment to depart from this usual practice. See *Lehman v Nakshian*, 453 US 156, 160-162; 101 S Ct 2698; 69 L Ed 2d 548 (1981).

Also, in *Michigan Council of Trout Unlimited v Dep't of Military Affairs*, 213 Mich App 203, 215; 539 NW2d 745 (1995), this Court held that "no clear statutory mandate" waived the sovereign immunity of federal agents under the Michigan Freedom of Information Act.

We note that neither of these standards state that the waiver of immunity from trial by jury must be express.

court has original jurisdiction in all matters not prohibited by law. Const 1963, art 6, § 13. Generally, the circuit court is prohibited by law from having jurisdiction over suits against the state by the Court of Claims act. MCL 600.6419; MSA 27A.6419. Thus, in the absence of § 3(2), WPA actions against private defendants would be tried in the circuit court, while WPA actions against public defendants would be tried in the Court of Claims. In the context of these underlying principles, § 3(2) appears specifically directed to actions against state defendants.

We posit three possible rationales for the inclusion of § 3(2) in the WPA. First, this provision may indicate that state entities, like private entities, are subject to jury trials. We reach this inference on the basis of several provisions of the WPA. First, the drafters of the WPA specifically included state entities among potential defendants as "employers." Section 1. Second, despite this express inclusion, the drafters also explicitly provided that actions thereunder be filed in the circuit court. Section 3(2). The drafters could have ensured that WPA actions against state entities be tried to the court by not providing that WPA actions be filed in the circuit court. (In the absence of this provision, WPA actions against state entities would have been subject to the exclusive jurisdiction of the Court of Claims, where all cases are tried by the court.) Circuit court actions, unlike Court of Claims actions, are subject to the right to a trial by jury depending on the nature of the action. As determined above, the right to a jury trial is retained under the WPA. By subjecting state entities sued under the WPA to circuit court jurisdiction, the Legislature may have impliedly waived

any immunity of state entities from being tried by a jury.[7]

Second, § 3(2) may indicate a more general premise that state and private defendants are to be treated equally under the WPA. Section 1 includes both state entities and private employers among potential defendants. Legislative analysis of the bills that became the WPA indicates indistinguishable treatment of public and private employers and that the purpose of the WPA is to protect both public and private employees. House Legislative Analysis, HBs 5088 & 5089, April 17, 1980. Indeed, it appears that a principal purpose of the WPA was to bring public employees into equality of coverage with private employees. *Id.* This focus on creating an equal playing field for public and private employers under the WPA in order to protect whistle-blowing public and private employees would also support an inference that state entities be subject to jury trials thereunder as private employers are.

Third, the purpose of this provision may be simply to allow plaintiffs the convenience of suing state entities in the circuit court rather than the Court of Claims. But such convenience concerns always exist when a party sues a state entity. We therefore find this explanation the least compelling of the three posited.

---

[7] We note that § 3(1) of the WPA states that actions may be brought "for appropriate injunctive relief, or actual damages, or both." The inclusion of this indication that both equitable and legal relief are available in the same section in which the circuit court's jurisdiction is set forth tends, in our judgment, to suggest that the drafters had the right to a jury trial in mind when providing for circuit court jurisdiction.

As stated above, we are obligated to construe the
WPA in a manner that gives some meaning to § 3(2).
Among the three rationales posited, we find the first
two more compelling than the third. We read this pro-
vision to subject state entities to jury trial. We believe
that this reading is clearly the most reasonable among
those we were able to articulate. In the context of the
WPA's provisions treating state and private employers
equally and subjecting WPA claims against state enti-
ties to circuit. court jurisdiction, we infer that the
drafters waived with respect to WPA liability any
immunity of such entities that would have prevented
them from being tried by a jury. Additionally, we note
that defendants here did not even raise the issue of
sovereign immunity in their motions to strike the jury
demand or on appeal.[8] Accordingly, we hold that the
status of the defendant universities as state entities
does not affect our conclusion that parties bringing
actions under the WPA retain the right to a jury trial.

For these reasons, we reverse in Docket No. 168358
and affirm in Docket No. 170339.

J. D. PAYANT, J., concurred.

O'CONNELL, J. (*concurring in part and dissenting
in part*). I respectfully dissent. I agree with the major-
ity that because plaintiffs seek legal as opposed to
equitable relief under the Whistleblowers' Protection
Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*,
they would normally be entitled to present their cases
to juries. Const 1963, art 1, § 14; *Abner A Wolf, Inc v*

---

[8] In fact, in Docket No. 168358, Michigan State University conceded in
its motion to strike plaintiff's jury demand that, "[w]ere plaintiff Anzaldua
asserting a state statutory civil rights claim, her claim to a jury trial would
be unassailable."

*Walch*, 385 Mich 253, 258-263; 188 NW2d 544 (1971). I also agree that state entities, such as the defendant universities, may ordinarily be sued only in the Court of Claims, MCL 600.6419; MSA 27A.6419, and that such trials are before the bench rather than a jury. MCL 600.6443; MSA 27A.6443. However, the majority infers that because certain provisions of the WPA could be construed as indicative of a Legislative intent to waive the sovereign right to be subjected only to trial before the bench, this right has been waived. With this inference, I disagree.

The state's right as sovereign to be tried only by the court, as opposed to a jury, may be waived only by express statutory enactment or by necessary inference from a statute. *Mead v Michigan Public Service Comm*, 303 Mich 168, 173; 5 NW2d 740 (1942); *McNair v State Hwy Dep't*, 305 Mich 181, 187; 9 NW2d 52 (1943). The WPA admits no express abrogation of this right, and the majority does not take this position. Rather, the majority concludes that the Legislature impliedly waived the immunity of state entities from being tried by a jury.

The case law is clear that such immunity may not be impliedly waived unless such an inference is necessary to the construction of a statute. *Mead, supra; McNair, supra*. Because the Michigan courts have not yet had occasion to address this precise issue, I have looked to analogous federal precedent, an approach expressly endorsed by the majority, *ante*, pp 578-579. As stated in *Lehman v Nakshian*, 453 US 156, 160-161; 101 S Ct 2698; 69 L Ed 2d 548 (1981):

> [I]f Congress waives the Government's immunity from suit, . . . the plaintiff has a right to a trial by jury only where that right is one of the "terms of [the Government's] con-

sent to be sued." [*United States v Testan*, 424 US 392, 399; 96 S Ct 948; 47 L Ed 2d 114 (1976)]. Like a waiver of immunity itself, which must be "unequivocally expressed," . . . "this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v United States*, 352 US 270, 276; 77 S Ct 269; 1 L Ed 2d 306 (1957).

The language could be written in no more absolute terms—any waiver of the right to a bench trial must be unequivocally expressed.

In the present case, the majority's inference that the Legislature has impliedly waived the right to be immunized from trial by jury is not a necessary inference, and, therefore, is improper. The majority advances several possible justifications for its conclusion that the WPA reflects an implied waiver. First, the majority states that the Legislature "specifically included state entities among potential defendants as 'employers.' Section 1 [MCL 15.361; MSA 17.428(1)]." *Ante*, p 587. It is argued that this reflects a legislative intent to treat the state and private employers "equally." However, defining "employer" so as to encompass the state is necessary to allow individuals to bring suit against the state, else they would likely be prohibited by the broad grant of immunity generally afforded the state. MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* This action *necessarily* reflects only the intent to subject the state to suit for violations of the WPA. It does not *necessarily* reflect a desire to treat the state and private employers equally. Because the majority's inference is not a necessary one, *Mead, supra*; *McNair, supra*, it may not properly be considered. *Lehman, supra.*

Second, the majority states that the Legislature's act of allowing suit to be brought against the state in the circuit court evinces an intent to subject the state to trial by jury. Again, it is not *necessary* to draw such an inference; the Legislature's action could easily be construed as a method to increase the convenience of plaintiffs by allowing them to bring suit in any county, rather than in only Ingham County, where the Court of Claims sits. Analogous federal decisions confirm this interpretation. See, e.g., *Thornell v Chesapeake & O R Co*, 166 F Supp 61 (WD Mich, 1958). The majority discounts this interpretation by stating that "such convenience concerns always exist when a party sues a state entity." This may be true, but the truth of this assertion does not elevate the majority's speculation to a necessary inference. The words of our Legislature fall far short of an "unequivocal expression" of an intent to waive the right of state entities to be tried by the court.

The majority proffers *Barbour v Dep't of Social Services*, 172 Mich App 275; 431 NW2d 482 (1988), as putative support for its conclusion. However, the majority neither endorses nor follows the aberrant reasoning of *Barbour*, which relies on the concept of implied waiver expressly rejected by the United States Supreme Court. *Lehman, supra*. Therefore, the reference to *Barbour* being dicta, I do not address it.

Finally, I would clarify that, contrary to the implication of the majority, I have not assumed that "necessary inference" means "only conceivable inference." Obviously, "necessary" means essential, not exclusive. The majority has set up something of a straw man in discussing this topic; I have not raised this argument and neither have the parties.

In sum, the inferences on which the majority relies are speculative. While the majority's inferences are, beyond question, reasonable, the appropriate standard is not whether one can reasonably infer, but whether one must necessarily infer. The majority's inferences are simply not "necessary" inferences. Therefore, in accordance with federal and Michigan precedent, I would conclude that there is no right to a trial by jury under the WPA against a state defendant in the absence of an express statutory abrogation of that right or an abrogation arising by way of necessary implication. Because neither exists in the present case, I would hold that the state entities retain their right to be tried before the bench.

Accordingly, in Docket No. 168358, I would reverse the decision of the trial court with respect to defendant Band only, who is sued individually, and who is subject to defend this action before a jury. I would affirm the denial of trial by jury with respect to the remaining defendants in Docket No. 168358. In Docket No. 170339, because the sole defendant is a state university, I would reverse.